ARIM v GENERAL MOTORS CORPORATION

AMERICAN TRANSMISSIONS, INC v GENERAL MOTORS
CORPORATION

AMERICAN TRANSMISSIONS, INC v CURTIS

JAY ENTERPRISES, INC v PIROCHTA

BOSSIO v PIROCHTA

Docket Nos. 145204, 145205, 147502, 148304, 154046. Submitted April
20, 1994, at Detroit. Decided July 6, 1994, at 9:05 A.M.

An investigation was conducted by the Department of State's
Bureau of Automotive Regulation (BAR) in conjunction with the
Office of the Attorney General (OAG) into fraudulent practices
by transmission repair facilities pursuant to the Motor Vehicle
Service and Repair Act, MCL 257.1301 *et seq.*; MSA 9.1720(1) *et
seq.* The BAR and its director, Frederick Pirochta, and its
mechanic, Walter Curtis, together with the OAG, received the
technical support and assistance of General Motors Corpora-
tion, Lucille Treganowan and her Pennsylvania corporation,
Transmissions by Lucille, and the Fairfax Group Ltd. (hereinaf-
ter referred to as the private defendants), in implementing the
investigation. As a result of the investigation, thirteen repair
facilities were charged with violating the act. In addition,
various administrative and civil complaints were filed. The
actions resulted in the suspension and revocation of certifica-
tions, registrations, or licenses, and the issuance of cease and
desist orders with regard to certain of the repair facilities and
their owners and employees. Those corporations and individu-

REFERENCES

Am Jur 2d, Constitutional Law § 528; Fraud and Deceit § 12;
Judgments § 415; Monopolies, Restraints of Trade, and Unfair
Trade Practices § 108.

Application of doctrine exempting from federal antitrust laws joint
efforts to influence legislative or executive action. 17 ALR Fed
645.

"Sham" exception to application of Noerr-Pennington Doctrine,
exempting from federal antitrust laws joint efforts to influence
governmental action. 71 ALR Fed 723.

Right of petition and assembly under Federal Constitution's First
Amendment—Supreme Court cases. 86 L Ed 2d 758.

als, and others, thereafter brought several civil actions in the Wayne Circuit Court against the private defendants. In each case, the court, Helene N. White, J., granted summary disposition or partial summary disposition for the defendants. The plaintiffs appealed, and their appeals were consolidated.

In Docket No. 145204, plaintiffs William Arim and Robert Ditta, and Pentco Enterprises, Inc., and in Docket No. 145205, plaintiffs American Transmissions, Inc., John F. Folino, Mario Bossio, and others, brought actions against the private defendants, alleging violation of due process under 42 USC 1983, fraud, injurious falsehood, tortious interference with advantageous business relationship, and intentional infliction of emotional distress, and in Docket No. 145204, abuse of process. After the defendants had the cases removed to the federal district court, the court granted the defendants' motion to dismiss on the basis of First Amendment immunity and, alternatively, on the ground that the Folino plaintiffs' § 1983 claim was barred by collateral estoppel as a result of the administrative proceedings. The court remanded the pendent state law claims to the Wayne Circuit Court. The plaintiffs appealed, and the Court of Appeals for the Sixth Circuit affirmed the judgment. 935 F2d 269 (CA 6, 1991). On remand, the Wayne Circuit Court granted summary disposition for the defendants. The plaintiffs appealed.

In Docket No. 148304, plaintiffs Jay Enterprises, Inc., American Transmissions, John F. Folino, Mario Bossio, Emilio Daloisio, and others, brought state law claims against Pirochta and Curtis, and in Docket No. 147502, Bossio, B & C Corporation, Inc., and Trans-4, Inc., brought state law claims against Curtis, Pirochta, and General Motors. The Wayne Circuit Court granted summary disposition for the defendants in both cases, but allowed the Bossio plaintiffs to file an amended complaint regarding their claims of injurious falsehood and tortious interference with an advantageous business relationship. Following the filing of an amended complaint, the court granted summary disposition for the defendants. American Transmissions, Inc., Bossio, and Daloisio (Docket No. 147502), and Jay Enterprises, Inc. (Docket No. 148304) appealed from the former orders of summary disposition. Bossio, B & C Corporation, Inc., and Trans-4, Inc. (Docket No. 154046) appealed from the latter order regarding the amended complaint.

The appeals were consolidated.

The Court of Appeals *held:*

1. In Docket Nos. 145204 and 145205, the trial court properly found the defendants to be entitled to immunity from the tort

claims because their assistance and cooperation with the state in a law enforcement operation was constitutionally protected under the *Noerr-Pennington* doctrine (*Eastern Railroad Presidents Conference v Noerr,* 365 US 127 [1961]; *United Mine Workers of America v Pennington,* 381 US 657 [1965]). The doctrine protects First Amendment petitioning of the government from claims brought under federal and state laws, including § 1983 claims and tortious interference claims. The plaintiffs failed to establish the "sham" exception to the doctrine, and the defendants did not exceed the permissible grounds of petitioning under the First Amendment.

2. In Docket No. 148304, the trial court properly found that collateral estoppel barred Jay Enterprises, Inc., which is owned by the Folino plaintiffs who were subjected to the administrative proceedings, from asserting claims against Pirochta and Curtis for improper conduct during the investigation. The defendant state employees were entitled to assert collateral estoppel defensively against Jay Enterprises, which is in privity with the Folinos.

3. In Docket No. 147502, the trial court did not err in dismissing the plaintiffs' fraud claims. These plaintiffs were not charged with any violation of the act and were not among the thirteen transmission repair shops mentioned in public statements by the Attorney General or the Secretary of State. Summary disposition was appropriate because the plaintiffs failed to allege that Curtis and Pirochta made material false representations upon which the plaintiffs detrimentally relied. The court properly granted summary disposition of the claim of intentional infliction of emotional distress because the plaintiffs did not allege outrageous conduct by Curtis or Pirochta. The trial court properly found that Curtis and Pirochta were entitled to governmental immunity.

4. In Docket No. 154046, the trial court properly granted the defendants' motion for summary disposition regarding the claims of tortious interference with business relations and injurious falsehood. The court properly concluded that there was no genuine issue of material fact because the defendants participated in a lawful investigation under the authority of the Secretary of State and the defendants had no motive to interfere with the business relations of the plaintiffs, who were not charged with any violations of the act. There is no evidence that the allegedly false statements made by the Secretary of State and the Attorney General were based on false statements made by Curtis or Pirochta, or that the statements referred to the plaintiffs.

Affirmed.

1. TORTS — CONSTITUTIONAL LAW — PETITIONING GOVERNMENT — ANTITRUST LIABILITY.

Parties who, pursuant to the First Amendment, petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent; the protection of this doctrine extends to efforts to influence administrative agencies and the courts; the doctrine is not limited to federal antitrust actions and extends to protect First Amendment petitioning of the government from claims brought under federal and state laws, including claims under 42 USC 1983 or alleging tortious interference with contractual relations in violation of the common law (US Const, Am I).

2. TORTS — CONSTITUTIONAL LAW — PETITIONING GOVERNMENT — SHAM EXCEPTION — ANTITRUST LIABILITY.

The "sham" exception to the doctrine that parties who, pursuant to the First Amendment, petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even through their petitions are motivated by anticompetitive intent applies when one party begins litigation not to win that litigation but to force its competitor to waste time and money in defending itself or engages in the administrative process only to preclude or delay its competitor's access to the process (US Const, Am I).

3. ESTOPPEL — COLLATERAL ESTOPPEL.

Collateral estoppel bars a plaintiff from relitigating issues in a second action where the litigants in the second action are the agents, servants, or employees of the litigants involved in the first action, the issues raised in the second action were fully and fairly litigated in the first action, and those issues were decided against the plaintiff in the first action.

4. FRAUD — ELEMENTS.

To state an action for fraud or misrepresentation, a plaintiff must prove: the defendant made a material misrepresentation; it was false; when the defendant made it, the defendant knew it was false or made it recklessly without knowledge of its truth or falsity; the defendant made it with the intent that the plaintiff would act upon it; the plaintiff acted in reliance upon it; and the plaintiff suffered damage.

*Stringari, Fritz, Kreger, Ahearn, Hunsinger, Bennett & Crandall, P.C.* (by *Martin E. Crandall* and *Janice A. Kyko*), for William Arim and Robert

Ditta, and American Transmissions, Inc., American Transmissions Land Company, Inc., Jay Enterprises, Inc., J J & T, Inc., Commercial Transmissions, Inc., John F. Folino, Joyce Folino, John A. Folino, Thomas A. Folino, and B & C Corporation, Inc., and Trans-4, Inc.

*James T. Loftus* and *Lee A. Schutzman,* and *Kirkland & Ellis* (by *Jeffrey A. Rosen* and *Karen A. Walker*), for General Motors Corporation, Transmissions by Lucille, Lucille Treganowan, and Fairfax Group, Ltd.

*Bendure & Thomas* (by *Mark R. Bendure*), for Mario Bossio, B & C Corporation, Inc., and Trans-4, Inc.

*Williams, Schaefer, Ruby & Williams* (by *James J. Williams*), for Emilio Daloisio, Mary Daloisio, and M & E Corporation, Inc.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Stewart H. Freeman,* Assistant in Charge, and *Brian D. Devlin,* Assistant Attorney General, for Frederick Pirochta and Walter Curtis.

Before: Fitzgerald, P.J., and Connor and M. O. Battani,* JJ.

Per Curiam. These consolidated appeals arise from a 1986 investigation, known as "Operation Shifty," that was conducted by the Department of State's (DOS) Bureau of Automotive Regulation (BAR) in conjunction with the Office of the Attorney General (OAG) into fraudulent practices by transmission repair facilities pursuant to the Mo-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tor Vehicle Service and Repair Act (the Act), MCL 257.1301 *et seq.*; MSA 9.1720(1) *et seq.*

The BAR and its director, Frederick Pirochta, and its mechanic, Walter Curtis, together with the OAG, received the technical support and assistance of General Motors Corporation, Lucille Tregowan and her Pennsylvania corporation, Transmissions by Lucille, and the Fairfax Group Ltd. (hereinafter referred to as the private defendants) in implementing the investigation. General Motors supplied four vehicles, twenty transmissions, garage facilities, and technical engineering assistance. Transmissions by Lucille rebuilt the transmissions and prepared them for use. Pursuant to the directions of state officials, Transmissions by Lucille filled the transmissions with used transmission fluid, sprayed the pans with graphite to create the appearance of "dirty pans," and added metallic debris to the pans. Fairfax provided the "cover stories" to explain why the cars were brought in for servicing.

During the summer of 1986, state employees took the vehicles with rebuilt transmissions to various franchised facilities, posing as customers in response to advertisements for low-priced transmission tune-ups. At thirteen repair facilities, expensive "tear-down" inspections were performed even though the transmissions were in good working order.

As a result of the investigation, the thirteen transmission repair facilities were charged on August 6, 1986, with violations of the Act. Among them were the AAMCO repair shop in Grand Rapids operated by Pentco Enterprises, Inc., that was owned by plaintiffs Arim and Ditta, and three American Transmissions, Inc., repair shops in Plymouth, Garden City, and Ann Arbor that were owned and operated by the Folino plaintiffs (who

also owned plaintiffs Jay Enterprises, Inc., J J & T, Inc., and Commercial Transmissions, Inc.). On the same day, the Secretary of State summarily suspended the certifications and registrations of the three American Transmissions repair facilities owned by the Folinos.

On August 11, 1986, the OAG filed an administrative complaint against Pentco and its owners and their repair facility licenses were also summarily suspended. On the same day, the OAG also filed a civil complaint for injunctive relief and penalties against Pentco in the Kent Circuit Court. The OAG also filed criminal charges against plaintiff Jay Enterprises, Inc. (owned by the Folinos) and its employee, Michael Rutherford, for obtaining money under false pretenses.[1] Plaintiff Mario Bossio, the owner of B & C Corp., Inc., and Trans-4, Inc. (hereinafter the Bossios), and plaintiffs Emilio and Mary Daloisio, the owners of M & E Corporation, Inc. (hereinafter the Daloisios), which also operated transmission repair facilities, were investigated but were not charged with any violations under the Act.

On August 12, 1986, at the close of the investigation, Attorney General Frank Kelley and Secretary of State Richard Austin held a joint press conference and issued a press release stating the nature of the undercover investigation and the identity of thirteen registered transmission repair facilities that had been charged with violation of the Act. On that same day, Attorney General Kelley discussed the investigation and the prosecution of the thirteen repair shops when he was interviewed by Bill Bonds of WXYZ-TV in Detroit.

On August 19, 1986, the DOS commenced admin-

---

[1] This Court reversed the conviction against Jay Enterprises in *People v Jay Enterprises, Inc,* unpublished opinion per curiam of the Court of Appeals, decided May 9, 1991 (Docket No. 105861).

istrative hearings regarding the suspension and revocation of the certification and registration of the three American Transmissions facilities owned and operated by the Folino plaintiffs. In the final administrative decision issued by the administrative hearing officer and entered by the Secretary of State on February 17, 1989, it was determined that all three American Transmissions shops owned by the Folinos committed unfair and deceptive acts and violated §§ 7 and 33 of the Act, MCL 257.1307; MSA 9.1720(7) and MCL 257.1333; MSA 9.1720(33), as well as various provisions of the BAR's General Rules. As a result, a cease and desist order was entered against the Folinos, whose registrations and certifications were permanently revoked. The hearing officer specifically found that these American Transmissions shops had misrepresented the condition of the transmissions and the need for expensive "tear-down" work, charged for services not performed, unnecessarily replaced a working transmission, or performed unnecessary repairs in order to profit.

During the administrative proceedings, the Folino plaintiffs attacked the integrity of Operation Shifty, contending that the BAR had violated § 26(2)(d) of the Act, MCL 257.1326(2)(d); MSA 9.1720(26)(2)(d), which prohibits the BAR from "deliberately misrepresent[ing] the condition of the vehicle" used in an investigation. Specifically, the Folinos argued that GM improperly cooperated with state officials, and that the use of old transmission fluids, the failure to flush the cooling lines, the alteration of the transmission pans to make them appear dirty, and the use of "coercive cover stories" would be misleading to an honest and reasonable transmission repair facility employee or mechanic. The hearing referee rejected these

claims and found that the investigative method was not improper.

The administrative decision was affirmed on appeal by the Wayne Circuit Court on May 8, 1990.[2] On September 11, 1990, application for leave to appeal was denied by this Court.[3] On March 29, 1991, the Michigan Supreme Court denied leave to appeal.[4]

During the pendency of the administrative proceedings involving the Folinos' American Transmissions repair shops, the Pentco plaintiffs, Arim and Ditta, agreed to waive trial and surrender their repair facility license under an administrative decision entered on May 19, 1987. Subsequently, on March 9, 1988, the Kent Circuit Court entered a consent injunction that permanently enjoined the Pentco plaintiffs from having an ownership interest in any repair facility or performing any automotive repair work for five years. In late 1991, Pentco was dissolved.

On July 10, 1989, the plaintiffs in Docket No. 145204 (plaintiffs Arim and Ditta, owners of Pentco) filed the instant action against the private defendants alleging a violation of due process under 42 USC 1983, as well as claims of fraud, injurious falsehood, tortious interference with advantageous business relationship, intentional infliction of emotional distress, and abuse of process. Principally, these plaintiffs contend that defendant GM initiated the Operation Shifty investigation to shut down franchised transmission repair facilities because the franchisees were informing their customers of their rights under a 1982 Federal Trade

[2] *American Transmissions, Plymouth v Dep't of State,* Docket No. 89-910378.

[3] *American Transmissions v Dep't of State,* unpublished order of the Court of Appeals (Docket No. 130457).

[4] 437 Mich 936 (1991).

Commission (FTC) consent decree that required GM to submit to binding arbitration to repair defective transmissions in approximately five million automobiles.

On July 18, 1989, the plaintiffs in Docket No. 145205 (the Folino and Bossio plaintiffs) filed a complaint alleging a violation of due process under § 1983, as well as fraud, injurious falsehood, tortious interference with a business relationship, and intentional infliction of emotional distress. As in Docket No. 145204, these plaintiffs alleged that GM initiated the investigation to disparage the franchised transmission repair facilities in order to avoid its warranty obligations under the FTC consent decree.

The private defendants then moved to dismiss the complaints in Docket Nos. 145204 and 145205 on the grounds that plaintiffs failed to state a claim under § 1983, that defendants' alleged conduct was privileged under the First Amendment, and that the complaints were barred by collateral estoppel because the factual core claims had already been adjudicated in the state administrative proceedings.

After the cases were removed by defendants to federal district court for the Eastern District of Michigan, the federal court granted the motion to dismiss on February 9, 1990, on the basis of First Amendment immunity under the *Noerr-Pennington* (*Eastern Railroad Presidents Conference v Noerr Motor Freight, Inc,* 365 US 127; 81 S Ct 523; 5 L Ed 2d 464 [1961]; *United Mine Workers of America v Pennington,* 381 US 657; 85 S Ct 1585; 14 L Ed 2d 626 [1965]) doctrine and, alternatively, on the ground that the Folino plaintiffs' § 1983 claim was barred by collateral estoppel because the "allegations forming the core of plaintiffs' claim, i.e., that the investigation was improper,

were considered and rejected in the underlying administrative proceedings." However, the court noted that the collateral estoppel ground for dismissal did not apply to the "non-Folino plaintiffs." Having dismissed the § 1983 claim, the court remanded the pendent state law claims to the Wayne Circuit Court on the ground that the court did not have authority to rule after dismissal of the federal claim. On June 4, 1991, the federal district court's judgments were affirmed in *American Transmissions, Inc v General Motors Corp,* 935 F2d 269 (CA 6, 1991).

On remand to the Wayne Circuit Court, the trial court granted summary disposition in favor of defendants in Docket Nos. 145204 and 145205 on July 18, 1991, and dismissed plaintiffs' state claims. Reconsideration was denied on September 12, 1991, and a final order was entered on September 27, 1991.

Plaintiff Jay Enterprises, Inc. (Docket No. 148304) and plaintiffs American Transmissions, Inc., Mario Bossio, and Emilio Daloisio (Docket No. 147502) filed state law claims against defendants Curtis and Pirochta. After a hearing held on November 22, 1991, the Wayne Circuit Court issued an order granting in part defendants' motion for summary disposition in Docket Nos. 147502 and 148304, but allowed the Bossio plaintiffs to file an amended complaint regarding their claims of injurious falsehood and tortious interference with an advantageous business relationship (Docket No. 154046).

On December 6, 1991, the Bossio plaintiffs filed the amended complaint. After a hearing on May 20, 1992, the trial court granted defendants' motion for summary disposition under MCR 2.116(C)(10).

Plaintiffs now appeal as of right.

Plaintiffs first contend that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(8) based upon *Noerr-Pennington* immunity. We disagree.

The doctrine and the exceptions thereto arose from *Noerr, supra,* and *Pennington, supra,* which essentially held, as summarized in *Video Int'l Production, Inc v Warner-Amex Cable Communications, Inc,* 858 F2d 1075, 1082 (CA 5, 1988), cert den sub nom *City of Dallas v Video Int'l Productions, Inc,* 490 US 1047 (1989), "that parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent."

In *Potters Medical Center v City Hosp Ass'n,* 800 F2d 568, 578 (CA 6, 1986), the Sixth Circuit Court of Appeals similarly observed "that attempts to influence the legislative process, even if prompted by an anticompetitive intent, are immune from antitrust liability." In *Potters,* at 578, the Sixth Circuit Court of Appeals, citing *Noerr, supra* at 137-138, noted two reasons for conferring immunity:

> [T]he First Amendment's protection of the right to petition the government, and the recognition that a representative democracy, such as ours, depends upon the ability of the people to make known their views and wishes to the government.

In *Potters,* supra at 578, the Sixth Circuit Court of Appeals also noted, citing *California Motor Transport Co v Trucking Unlimited,* 404 US 508, 510; 92 S Ct 609; 30 L Ed 2d 642 (1972), that "the protection of the *Noerr-Pennington* doctrine [extends] to

efforts to influence administrative agencies and the courts."

Until recently, courts have identified two separate exceptions to the *Noerr-Pennington* doctrine: (1) the "sham" exception and (2) the "coconspirator" exception. As set forth in *Video Int'l, supra* at 1082:

> The "sham" exception comes into play when the party petitioning the government is not at all serious about the object of that petition, but engages in the petitioning activity merely to inconvenience its competitor. Thus, the sham exception is said to apply when one party has begun litigation not to win that litigation, but rather to force its competitor to waste time and money in defending itself. Similarly, a party that "petitions" the government by engaging in administrative processes only to preclude or delay its competitor's access to those processes may be liable for antitrust damages under the "sham" exception.

The "coconspirator" exception was applied where "a government official or body has been influenced by the petitioner through some corrupt means." *Id.* at 1083. However, in *City of Columbia v Omni Outdoor Advertising, Inc,* 499 US 365, 382-384; 111 S Ct 1344; 113 L Ed 2d 382 (1991), the Court rejected a "conspiracy" exception to the *Noerr-Pennington* doctrine.

In the instant case, defendants were entitled to *Noerr-Pennington* immunity to plaintiffs' tort claims because their assistance and cooperation with the State of Michigan in a law enforcement operation was constitutionally protected under the First Amendment.

Contrary to plaintiffs' contention, the *Noerr-Pennington* doctrine is not limited to federal antitrust actions. As explained in *Video Int'l, supra* at 1084:

Although the *Noerr-Pennington* doctrine initially arose in the antitrust field, other circuits have expanded it to protect first amendment petitioning of the government from claims brought under federal and state laws, including section 1983 and common-law tortious interference with contractual relations. . . . There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust. [Citations omitted.]

Furthermore, contrary to plaintiffs' contention, there is nothing in *City of Columbia, supra,* to indicate that the Court limited the application of the doctrine to antitrust cases. The Sixth Circuit Court of Appeals, in affirming the decision of the federal district court, rejected plaintiffs' argument in *American Transmissions, Inc v General Motors Corp,* 935 F2d 269 (CA 6, 1991), cert den — US —; 112 S Ct 308; 116 L Ed 2d 250 (1991).

Moreover, plaintiffs fail to establish the "sham" exception to the *Noerr-Pennington* doctrine. In view of the license revocation actions undertaken by the BAR against plaintiffs Arim and Ditta and the Folino plaintiffs, defendants' conduct in cooperating with the state government could scarcely be considered "baseless." *Potters, supra* at 579.

Further, there is nothing to indicate that defendants—specifically GM—exceeded the permissible bounds of petitioning under the First Amendment. The record indicates that the state conducted and controlled the entire operation with the assistance of defendants. According to the administrative hearing officer, defendant Pirochta initially contacted GM, requesting assistance with regard to the BAR's ongoing investigation, and GM replied that "it was up to the State of Michigan to investigate the matter on its own." Subsequently, GM and the

other private defendants agreed to provide assistance to the state investigation, which was controlled by the OAG and the BAR. Thus, there is no basis for plaintiffs' contention that GM initiated the Operation Shifty investigation in order to avoid its warranty requirements pursuant to the FTC consent decree.

Notwithstanding, plaintiffs argue that evidence discovered in a companion case in the Court of Claims allegedly shows that GM approached the OAG and DOS and asked if "[the State] would be willing to join forces and conduct a number of investigations in Michigan [concerning franchised transmission repair shops]." But a perusal of the evidence clearly shows that the BAR, which was already considering an investigation of unnecessary transmission repairs at the time, contacted GM. It was only after the BAR found out that GM was also paying for unnecessary repairs that GM offered to "join forces and conduct a number of investigations in Michigan."

Even if GM cooperated with the state in order to avoid its warranty requirements under the FTC decree, plaintiffs still have failed to show that defendants engaged in "excessive" or improper cooperation with the State of Michigan beyond the permissible scope of the First Amendment. Here, the trial court agreed with the federal court's conclusion that defendants' actions were comparable to the immunized assistance given to law enforcement activities in *Ottensmeyer v Chesapeake & Potomac Telephone Co of Maryland,* 756 F2d 986 (CA 4, 1985), and *Forro Precision, Inc v Int'l Business Machines Corp,* 673 F2d 1045 (CA 9, 1982).

In *Ottensmeyer,* an antitrust case, the Fourth Circuit Court of Appeals held that private telephone companies that actively assisted in a law

enforcement investigation of a rival answering service were entitled to First Amendment immunity, notwithstanding anticompetitive motives or purposes. In *Forro,* the Ninth Circuit Court of Appeals similarly held that IBM's active participation with the police in investigating Forro's suspected theft of IBM trade secrets was entitled to First Amendment immunity. See also *Stachura v Truszkowski,* 763 F2d 211 (CA 6, 1985), rev'd in part on other grounds *Memphis Community School Dis v Stachura,* 477 US 299; 106 S Ct 2537; 91 L Ed 2d 249 (1986), where the Sixth Circuit Court of Appeals held that a private party does not lose First Amendment protection, notwithstanding improper means or motives.

In short, plaintiffs have offered nothing to show that allowing immunity for the private defendants in these cases "would abuse the First Amendment into becoming the ultimate weapon—both a sword for achieving evil and a shield for preventing liability."

Thus, the trial court correctly concluded, as did the federal district court and the Sixth Circuit Court of Appeals, that defendants' conduct was protected by their First Amendment right to petition the government, and that neither GM nor the other private defendants exceeded the scope of their First Amendment protection. In view of defendants' immunity, the trial court properly granted their motions for summary disposition under MCR 2.116(C)(7). Because this issue is dispositive in these cases, we need not reach the other issues raised in Docket Nos. 145204 and 145205.

DOCKET NO. 148304

Plaintiff Jay Enterprises, Inc., which is owned

by the Folino plaintiffs, argues that the trial court erred in finding that collateral estoppel barred the Folino plaintiffs, who were subjected to the administrative proceedings, from asserting claims against defendants Pirochta and Curtis for improper conduct during the investigation. We disagree.

First, even though defendants Pirochta and Curtis were not parties to the prior administrative proceeding, they may assert collateral estoppel defensively so as to preclude plaintiff Jay Enterprises' claim against them. A well-established exception to the mutuality requirement is where the litigants in the second suit are the agents, servants, or employees of the litigants involved in the first suit. *Braxton v Litchalk,* 55 Mich App 708; 223 NW2d 316 (1974); see also *Lichon v American Universal Ins Co,* 435 Mich 408, 428, n 16; 459 NW2d 288 (1990). As plaintiff acknowledges in its complaint, defendants Pirochta and Curtis are state employees, and, thus, they are entitled to assert collateral estoppel defensively against plaintiff Jay Enterprises, which is in privity with the Folinos. *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37; 191 NW2d 313 (1971).

Second, plaintiff's claims that defendants conducted an improper investigation of the Folino plaintiffs' transmission repair facilities by deliberately misrepresenting the condition of the vehicles used in the investigation in violation of § 26(2)(d) of the Act are the same issues raised by the Folino plaintiffs and decided against them during the state administrative proceedings. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 399 Mich 449; 249 NW2d 121 (1976).

Third, the factual questions central to these claims were fully and fairly litigated by the Folino plaintiffs in their defense during the administra-

tive proceedings. Hence, because plaintiff had a full and fair opportunity to litigate the same issues during the prior adversarial administrative proceedings, and because the issues were decided adversely to plaintiff, collateral estoppel bars plaintiff from relitigating these claims before this Court in the action against defendants Curtis and Pirochta. The trial court properly granted summary disposition for defendants.

DOCKET NO. 147502

Plaintiffs argue that the trial court erred in dismissing their claim of fraud without permitting them to amend their complaint, in finding that plaintiffs failed to set forth a prima facie case of intentional infliction of emotional distress, and in determining that plaintiffs' claims of injurious falsehood and tortious interference with advantageous business relationships were barred by governmental immunity.

First, the trial court did not err in dismissing plaintiffs' fraud claim. To show fraud or misrepresentation, plaintiffs must prove: (1) defendants made a material misrepresentation; (2) it was false; (3) when defendants made it, defendants knew that it was false or made recklessly without knowledge of its truth or falsity; (4) defendants made it with the intent that plaintiffs would act upon it; (5) plaintiffs acted in reliance upon it; and (6) plaintiffs suffered damage. *Hi-Way Motor Co v Int'l Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976). Here, plaintiffs were not charged with any violation of the Act and were not among the thirteen transmission repair shops mentioned in the public statements by Attorney General Kelley and Secretary of State Austin. Because plaintiffs were not the "object of fraud" and were not sub-

jected to the administrative process, no factual development could justify a right of recovery.

Nevertheless, plaintiff Bossio alleges in plaintiffs' joint amended complaint that the Bossio plaintiffs were included on a DOS inquiry form for license applicants listing facilities that had been charged with violations as a result of Operation Shifty. Even accepting this claim as true, plaintiffs still fail to allege that defendants Curtis and Pirochta made materially false representations upon which plaintiffs detrimentally relied. *Hi-Way, supra.* Because summary disposition is appropriate under either MCR 2.116(C)(8) or (10), there is no need to disturb the result. *Ellsworth v Highland Lakes Development Associates,* 198 Mich App 55, 57; 498 NW2d 5 (1993).

Second, the trial court properly granted summary disposition pursuant to MCR 2.116(C)(8) of plaintiffs' claims of intentional infliction of emotional distress. A review of plaintiffs' complaint does not reveal any allegations of outrageous conduct on the part of defendants Curtis and Pirochta. *McCahill v Commercial Union Ins Co,* 179 Mich App 761, 768; 446 NW2d 579 (1989).

Last, the trial court did not err in granting summary disposition on the ground that defendants were entitled to governmental immunity. There is no doubt that defendants Curtis and Pirochta, in carrying out the Operation Shifty investigation, were acting in the course of their employment and within the scope of their authority in the discharge of a governmental function. Thus, the only question is whether defendants' conduct amounted "to gross negligence that is the proximate cause of the injury or damage." *Dedes v South Lyon Community Schools,* 199 Mich App 385, 388-391; 502 NW2d 720 (1993). Given the methodical integrity of Operation Shifty, plaintiffs'

claim that defendants' conduct in carrying out the investigation amounted to gross negligence cannot be sustained. Assuming, arguendo, that defendant Pirochta provided false information to Attorney General Kelley and Secretary of State Austin that was then conveyed to the media, there is no showing that Pirochta's conduct rose to the level of gross negligence. Given that plaintiffs were not charged with any violations of the Act and their names were never published in connection with the investigation, plaintiffs suffered no apparent injury or damage. Thus, defendants were entitled to summary disposition pursuant to MCR 2.116(C)(7) of all the tort claims of plaintiffs Bossio and Daloisio.

### DOCKET NO. 154046

The Bossio plaintiffs contend that the trial court improperly granted defendants' motion for summary disposition regarding their claim of tortious interference with business relations. We disagree. The trial court properly concluded that there was no genuine issue of material fact regarding plaintiffs' claim because defendants participated in a lawful investigation under the authority of the Secretary of State and because there was no indication that defendants had any motive to interfere with the business relations of plaintiffs, who were not charged with any violations of the Act. *Michigan Podiatric Medical Ass'n v Nat'l Foot Care Program, Inc,* 175 Mich App 723, 735; 438 NW2d 349 (1989).

The plaintiffs also contend that the trial court improperly granted defendants' motion for summary disposition regarding their claim of injurious falsehood. Again, we disagree. The record provides no evidence to support plaintiffs' claim that the

allegedly false statements made by Secretary of State Austin and Attorney General Kelley were based upon false statements made by defendants Curtis or Pirochta, or that these statements referred to plaintiffs. *Kollenberg v Ramirez,* 127 Mich App 345, 352; 339 NW2d 176 (1983).

Affirmed.