*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JAN H. POL, D.V.M.

BUREAU OF PROFESSIONAL LICENSING,

Petitioner-Appellee,

v

JAN H. POL, D.V.M.,

Respondent-Appellant.

UNPUBLISHED
December 19, 2019

No. 344666
LARA Bureau of Professional
   Licensing
LC No. 16-035858

Before: LETICA, P.J., and GADOLA and CAMERON, JJ.

PER CURIAM.

Respondent, Jan H. Pol, appeals the order of the Board of Veterinary Medicine's Disciplinary Subcommittee ("petitioner"), operating under the auspices of the Department of Licensing and Regulatory Affairs, Bureau of Professional Licensing, which imposed professional probation with conditions because respondent violated MCL 333.16221(a) (negligence and failure to exercise due care). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent is a licensed veterinarian. This Court earlier had occasion to observe that respondent "operates a veterinary practice in Weidman, Michigan," and also "has a reality television show on a cable network." *Bureau of Health Care Servs v Pol*, unpublished per curiam opinion of the Court of Appeals, issued June 23, 2016 (Docket No. 327346), p 1 ("*Pol I*"). In that case, this Court reversed a disciplinary action against respondent on the ground that petitioner failed to establish a clear standard of care against which to evaluate respondent's practices. *Id.* at 9.

In this case, a viewer of respondent's television program took issue with the manner in which respondent performed an ovariohysterectomy procedure on a dog and filed an

administrative complaint with petitioner. After an investigation, the Attorney General, on behalf of petitioner, filed a complaint, alleging that respondent's behavior constituted negligence under MCL 333.16221(a) and incompetence under MCL 333.16221(b)(*i*). The factual basis for the complaint was that respondent (1) failed to intubate the dog or place an intravenous catheter in the dog during the surgical procedure, (2) failed to use an electronic monitoring device during the procedure, (3) failed to request assistance finding the dog's uterus during the procedure, and (4) failed to wear a surgical cap, mask, and gown during the procedure. After the complaint was filed, petitioner received an additional complaint from a horse's owners, alleging that, in the course of treating a laceration on the horse's left hip, respondent failed to wear surgical gloves and reduce the hair surrounding the wound. A second superseding complaint was filed in relation to this complaint, again alleging violations of MCL 333.16221(a) and MCL 333.16221(b)(*i*). Respondent filed an answer in which he requested a hearing and the dismissal of the superseding complaint.

A hearing on the second superseding complaint was conducted over several days before an administrative law judge. The administrative law judge took extensive testimony, including from several experts, and issued a 53-page proposal for decision ("PFD"). The PFD contained a summary of the testimony at the hearing, a list of exhibits admitted at the hearing, findings of fact, conclusions of law, and analysis of facts and law. The administrative law judge also made credibility determinations. Specifically, the administrative law judge found that the testimony of veterinarians James Havenga and Robert van Wessum was more credible than the testimony of veterinarians Joseph Kline and Lisa Zeppa. The administrative law judge concluded that petitioner failed to prove by a preponderance of the evidence that respondent was negligent or incompetent in his care of the dog or the horse and that respondent should not be subject to sanctions. The administrative law judge recommended that the proposed findings of fact and conclusions of law be adopted by petitioner.

Petitioner adopted the PFD in part and rejected it in part by concluding that there was adequate evidence that respondent violated MCL 333.16221(a) based on "[r]espondent's failure to intubate the dog during the procedure, failure to wear a surgical mask and gown during the procedure, and failure to clip the hair around the horse's wound prior to suturing the wound . . . ." In so holding, petitioner relied on the testimony of Dr. Kline and Dr. Zeppa, which it deemed credible. Petitioner also found that Dr. Kline's testimony reflected his understanding of the correct standard of care.

Petitioner then entered a final order, placing respondent on probation for "a minimum of one day, not to exceed one year" and directing respondent to pay all costs incurred in complying with the terms of petitioner's order and to comply with the Public Health Code. The order provided that respondent would be discharged from probation upon complying with the order and successfully completing continuing education "in the areas of small animal surgical preparation and monitoring and small/large animal aseptic technique." This appeal followed.

## II. ISSUE PRECLUSION

Respondent first argues that petitioner erred by declining to give preclusive effect to this Court's conclusion in *Pol I*. According to respondent, the doctrine of collateral estoppel should have precluded petitioner from relitigating whether respondent's failure to wear a mask and

gown during the ovariohysterectomy procedure constituted a failure to adhere to the proper standard of care. We disagree.

The application of collateral estoppel presents a question of law subject to de novo review. *Rental Props Owners Ass'n v Kent Co Treasurer*, 308 Mich App 498, 526; 866 NW2d 817 (2014). Collateral estoppel precludes relitigation of an issue in a different, subsequent action between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. See *People v Gates,* 434 Mich 146, 154; 452 NW2d 627 (1990); 1 Restatement Judgments, 2d, § 27, p 250. The doctrine bars relitigation of issues where the parties had a full and fair opportunity to litigate those issues in an earlier action. *Arim v Gen Motors Corp*, 206 Mich App 178, 195; 520 NW2d 695 (1994).

In *Pol I*, petitioner filed an administrative complaint against respondent, alleging that he violated the Public Health Code, in part, by failing to wear a cap, mask, or gown, when performing eye surgery on a dog. *Pol I*, unpub op at 1-2. After a contested hearing, the hearing officer issued a PFD, concluding that respondent violated MCL 333.16221(a) and (b)(*i*). *Id.* at 2. Petitioner adopted the PFD and placed respondent on probation, fined him, and ordered him to take continuing education classes. *Id.* On appeal, this Court held that petitioner's decision was not supported by competent, material, and substantial evidence on the whole record. *Id.* at 4. In relevant part, this Court held that "[t]he evidence submitted [did] not establish a clear standard of care that respondent violated." *Id.* at 9. Because this Court concluded that the record did not support that Dr. Pol was negligent in his care of the dog, this Court remanded the matter with instructions to dismiss the complaint. *Id.* at 9.

In urging application of collateral estoppel, respondent argues that "[t]his Court's holding in *Pol I* should estop [petitioner] from re-litigating whether [respondent] was negligent here by not wearing a mask and gown on a dog surgery that occurred three years prior to *Pol I*." In rejecting the invocation of collateral estoppel in the instant case, the administrative law judge explained as follows:

> [The Court in] *Pol* [*I*] did not make the ". . . conclusive determination that the minimum standard of care was satisfied by Dr. Pol in 2011 . . ." as the Respondent claims, but rather ruled that the Petitioner did not establish that Dr. Pol violated the standard of care in that case. There is nothing about the Petitioner's failure to meet their burden of establishing the standard of care in 2011 as noted in the 2016 decision that precludes the Petitioner from filing similar allegations in this matter and attempting to establish the standard of care for a veterinarian in 2013 when the care of [the dog at issue in this case] took place. In addition to the events occurring in two different years, there were two different types of surgeries. It cannot be said that the same issue of fact has already been litigated with a decision on the merits and therefore estoppel does not apply.

The administrative law judge's reasoning was sound. In the earlier appeal involving these parties, this Court did not conclude as a matter of law and fact that no authoritative standard of care relating to veterinary surgical attire existed. Rather, this Court held that the record in *Pol I* brought no standard to light, which undercut any allegation that respondent had

-3-

violated any such standard. See *Pol I*, unpub op at 9. That result stemmed from the procedural posture of that issue as developed in *Pol I*. *Pol I* did not prevent petitioner from endeavoring to establish the relevant standard in a subsequent case arising from different events. Importantly, our Supreme Court has observed that courts are reluctant to apply claim preclusion doctrines when questions of law are involved and where the earlier and later causes of action do not arise from the same subject matter or transaction. *Young v Edwards*, 389 Mich 333, 339; 207 NW2d 126 (1973). We conclude that what, if any, standard of care applies in relation to veterinary surgical attire is a question of law and that *Pol I* and the case currently before us concern different animals and surgical procedures. For these reasons, respondent's argument that the doctrine of collateral estoppel applies is without merit.

## III. UNOFFICIAL TRANSCRIPTS

Respondent argues that petitioner denied him his right to constitutional due-process[1] by refusing to supplement the official record with transcripts of March 2018 and June 2018 meetings that petitioner held when deciding respondent's case. According to respondent, because of petitioner's "tactics," the transcripts are excluded as part of the agency record on appeal under MCR 7.210(A)(2). We conclude that the law of the case doctrine bars us from considering respondent's argument.

The law of the case doctrine holds "that a ruling by an appellate court on a legal question binds the appellate court and all lower tribunals, and the question may not be differently determined in the same case where the facts remain materially the same." *Bruce Twp v Gout*, 207 Mich App 554, 557; 526 NW2d 40 (1994). "The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Ashker ex rel Estate of Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

In a December 7, 2018 order, this Court granted petitioner's motion to strike respondent's initial brief on appeal because it relied on "unofficial transcripts . . . prepared by a court reporter hired by [respondent]." *In re Jan H Pol, DVM*, unpublished order of the Court of Appeals, entered December 7, 2018 (Docket No. 344666). In doing so, this Court held the following:

> Those [unofficial] transcripts cannot reasonably be considered documents or files of the Disciplinary Subcommittee so as to be part of the record under MCR 7.210(A)(2) where it is manifest they were not prepared pursuant to established procedures of the Disciplinary Subcommittee and do not include transcription of testimony. They are also plainly not opinions or orders of the Disciplinary Subcommittee. Other provisions cited by appellant do not reasonably support treating the unofficial transcripts in question as part of the record. [*Id.*]

---

[1] See US Const, Am XIV, § 1; Const 1963, art 1, § 17.

Thus, this Court declined to consider the unofficial transcripts on appeal because they were not part of the record under MCR 7.210(A)(2). This Court's decision now stands as the law of the case, and we decline to consider respondent's appellate objections any further.

## IV. SUFFICIENCY OF THE FINAL ORDER

Respondent argues that petitioner's final order was deficient because it did not satisfy the requirements of Mich Admin Code, R 338.1630(4) and Rule 338.1630(5). We disagree.

Rule 338.1630 provides, in relevant part, the following:

> (4) After reviewing the findings of fact and conclusions of law, the disciplinary subcommittee . . . may make revisions. In making revisions, the disciplinary subcommittee . . . shall specifically identify those portions of the findings of fact or conclusions of law, or both, that it is modifying or rejecting and identify evidence from the record that supports its revisions.

> (5) A disciplinary subcommittee . . . in its final order, may adopt, modify, or reject, in whole or in part, the opinion or proposal for decision of the administrative law judge. If the disciplinary subcommittee, board, or task force modifies or rejects the opinion or proposal for decision, the reasons for that action shall be stated in the final order.

In this case, the final order stated that petitioner adopted the PFD in part and rejected it in part by concluding that there was adequate evidence that respondent violated MCL 333.16221(a) insofar as respondent failed to intubate the dog or wear a surgical mask or gown during the ovariohysterectomy procedure. Petitioner also concluded that there was adequate evidence that respondent violated MCL 333.16221(a) by failing to clip the hair surrounding the horse's wound before treating it. Petitioner noted that the record supported that the horse had a long winter coat at the time respondent treated the horse's wound. Petitioner then cited the testimony of Dr. Kline and Dr. Zeppa, who offered opinions consistent with petitioner's conclusions. Petitioner also cited "the personal experience and expertise of [its] members." Thus, petitioner stated its reasons for rejecting the administrative law judge's proposal and provided facts to support its decision in compliance with Rule 338.1630(4) and Rule 338.1630(5). Nothing in the language of the rules demands extensive analysis detailing the reasoning behind the modifications. See *Detroit Base Coalition for the Human Rights of the Handicapped v Dep't of Social Servs*, 431 Mich 172, 185; 428 NW2d 335 (1988) (recognizing that, when interpreting the language of administrative rules, courts consider the rule's plain meaning). Because petitioner adequately specified its departures from the PFD, we conclude that respondent's argument that the final order was deficient is without merit.

## V. VIOLATION OF THE PUBLIC HEALTH CODE

Respondent argues that petitioner's final order is not supported by competent, material, and substantial evidence. We disagree.

## A. STANDARD OF REVIEW

"A final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material evidence on the whole record." *Vanzandt v State Employees Retirement Sys*, 266 Mich App 579, 583; 701 NW2d 214 (2005). See also Const 1963, art 6, § 28.

A court must review the entire record, not just the portions that support an agency's findings, when assessing whether the agency's decision was supported by competent, material, and substantial evidence on the whole record. *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). "Substantial evidence" means evidence that a reasonable person would find acceptably sufficient to support a conclusion. *Id.* This may be substantially less than a preponderance of evidence, but does require more than a scintilla of evidence. *Id.* The *Risch* panel further observed:

> Moreover, if the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence. A reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by evidence on the record or because the court might have reached a different result. [*Id.* at 372-373 (citations omitted).]

"Under th[e] test, it does not matter that the contrary position is supported by more evidence, that is, which way the evidence preponderates, but only whether the position adopted by the agency is supported by evidence from which legitimate and supportable inferences were drawn." *McBride v Pontiac Sch Dist (On Remand)*, 218 Mich App 113, 123; 553 NW2d 646 (1996). "[A]n appellate court must generally defer to an agency's administrative expertise." *Dep't of Comm Health v Anderson*, 299 Mich App 591, 598; 830 NW2d 814 (2013).

## B. GOVERNING LAW

Petitioner determined that respondent violated MCL 333.16221(a). MCL 333.16221 provides, in relevant part, the following:

> The disciplinary subcommittee shall proceed under section 16226 if it finds that 1 or more of the following grounds exist:
>
> (a) . . . a violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may impair, the ability to safely and skillfully engage in the practice of the health profession.

As used in MCL 333.16221(a), "[n]egligence is a well-recognized legal concept which describes conduct that falls below a standard of reasonable or due care." *Sillvery v Bd of Med*, 145 Mich App 681, 686; 378 NW2d 570 (1985). "A failure to exercise due care contemplates an abdication of responsibilities or carelessness in executing one's duties." *Id.*

MCL 333.16231 authorizes the issuance of a complaint against a licensee for an alleged violation of MCL 333.16221, and MCL 333.16231a provides for a hearing on the complaint before a hearing examiner. The hearing examiner "shall determine if there are grounds for disciplinary action under section 16221. . . ." MCL 333.16231a(2). The hearing examiner must "prepare recommended findings of fact and conclusions of law for transmittal to the appropriate disciplinary subcommittee." MCL 333.16231a(2). "In imposing a penalty . . . a disciplinary subcommittee shall review the recommended findings of fact and conclusions of law of the hearings examiner." MCL 333.16237(1). MCL 333.16237(3) provides that

> [i]n reviewing the recommended findings of fact and conclusions of law of the hearings examiner and the record of the hearing, a disciplinary subcommittee may request the hearings examiner to take additional testimony or evidence on a specific issue or may revise the recommended findings of fact and conclusions of law as determined necessary by the disciplinary subcommittee, or both. A disciplinary subcommittee shall not conduct its own investigation or take its own additional testimony or evidence under this subsection.

MCL 333.16237(4) provides:

> If a disciplinary subcommittee finds that a preponderance of the evidence supports the recommended findings of fact and conclusions of law of the hearings examiner indicating that grounds exist for disciplinary action, the disciplinary subcommittee shall impose an appropriate sanction. . . . If the disciplinary subcommittee finds that a preponderance of the evidence does not support the findings of fact and conclusions of law of the hearings examiner indicating that grounds exist for disciplinary action, the disciplinary subcommittee shall dismiss the complaint. A disciplinary subcommittee shall report final action taken by it in writing to the appropriate board or task force.

When a disciplinary subcommittee finds the existence of one or more of the grounds set forth in MCL 333.16221, the subcommittee is authorized under MCL 333.16226 to impose various sanctions against the licensee. And MCL 333.16226(2) provides:

> Determination of sanctions for violations under this section shall be made by a disciplinary subcommittee. If, during judicial review, the court of appeals determines that a final decision or order of a disciplinary subcommittee prejudices substantial rights of the petitioner for 1 or more of the grounds listed in section 106 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.306, and holds that the final decision or order is unlawful and is to be set aside, the court shall state on the record the reasons for the holding and may remand the case to the disciplinary subcommittee for further consideration.

## C. ANALYSIS

In this case, after considering the whole record, we conclude that expert testimony presented at the hearing was sufficient to establish that there was an applicable standard of care that respondent breached.

-7-

At the contested hearing, Dr. Kline testified that he is a licensed veterinarian and that he has been practicing in Michigan since 1994. Dr. Kline testified that he primarily treats small animals but that he occasionally treats horses in his veterinary practice. Dr. Kline opined that the relevant standard of care can be established by reviewing the relevant veterinary medical literature. He further opined that the standard of care does not vary depending on economic circumstances or location within the state.

When asked about intubating an animal during an ovariohysterectomy procedure, Dr. Kline testified that "as a universal thing the airway needs to be protected when . . . the animal is unconscious" because "if you have an emergency occur and you don't have that tube in place there that patient, no matter how low the percentage is of it happening, is out of luck." Dr. Kline attributed that opinion to "the standard of care that's promulgated in surgery lectures . . . textbooks, the monographs on surgery[,] and . . . scientific articles in peer-reviewed credible journals." Dr. Kline also testified that respondent's failure to intubate the dog during the ovariohysterectomy procedure violated the standard of care because "having an unprotected airway is an unsafe practice."

When asked about surgical attire, Dr. Kline responded as follows:

> Asepsis is a principal [sic] that's been worked out in the last 120 years and the point of covering up your head, your mouth, your hands and your street clothing when you're in an operating room is so you don't contaminate the patient. . . . You may have no hair on your head but you still have skin and your skin is flaking off cells all the time into the operative field. These animals can survive this most of the time but I would argue that it's not in their benefit when you can prevent this, so you cover you[r] bare skin up so you're not dropping skin flakes on them. Hair is an excellent wick for all kinds of bacteria and everything in the world comes out of people's mouths and it does not belong in the abdomen of an animal so you cover up with these things.

Dr. Kline testified that "[w]hen opening a body cavity it is essential to have a . . .mask and gown that are sterile" and that respondent was negligent and failed to meet the standard of care for failing to wear a mask and gown. With respect to whether respondent violated the standard of care when treating the horse, Dr. Kline testified that "you cannot evaluate the extent of a wound without visualizing it and if it's covered with fur . . .you're not going to be able to clean it adequately . . . ." Based on this, Dr. Kline opined that respondent failed to meet the standard of care for not having reduced the hair around the horse's wound.

Dr. Zeppa, a veterinarian who had been licensed in Michigan since 1999, testified that her veterinary practice mainly focuses on horses and goats. Dr. Zeppa opined that respondent failed to meet minimal standards when treating the horse at issue for a laceration. Dr. Zeppa explained that reducing the hair "is done before closure so that you can gain good access to inspecting the wound so you don't miss any other small wounds that might be there," and also to "get a better assessment of how deep and/or how big the wound may or may not be." Dr. Zeppa opined that the standard of care called for clipping the hair around the wound and supported this opinion by referring to excerpts from a textbook.

-8-

Accordingly, after reviewing the whole record, we conclude that petitioner's determination that respondent was negligent and failed to exercise due care was supported by competent, material, and substantial evidence. To the extent that alternative findings could have been supported by the evidence, there was sufficient evidence in support of petitioner's findings and conclusions. See *Risch*, 274 Mich App at 372. Further, whether respondent violated the standard of care is a matter within petitioner's expertise, to which we defer. *Anderson*, 299 Mich App at 598.

Respondent faults petitioner for not according proper deference to the administrative law judge's unique opportunity to hear all of the testimony and view all of the witnesses firsthand. To support his position, respondent relied on language from our Supreme Court's decision in *Mich Employment Relations Comm v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 126-127; 223 NW2d 283 (1974), which requires a reviewing court to consider a hearing examiner's credibility determinations as part of the record.

However, MCL 333.16226(2) explicitly grants petitioner broad power to sanction or take disciplinary action, and MCL 333.16237(4) vests "the disciplinary subcommittee with the discretion to determine whether the preponderance of the evidence supports or does not support the findings of fact and conclusions of law of the hearing officer." *Anderson*, 299 Mich App at 599. Further, when rejecting an appellant-optometrist's argument that the subcommittee's rejection of the hearing referee's conclusion that the appellant's actions warranted no disciplinary sanctions exceeded its permissible standard of review, the Court in *Consumer & Indus Servs v Greenberg*, 231 Mich App 466, 469-470; 586 NW2d 560 (1998), held the following:

> No section of the Public Health Code conditions the subcommittee's power to sanction on a prior concurring conclusion by the hearing referee. . . . MCL 333.16237(3) . . . grants the subcommittee discretion to review and revise proposals for decision. In light of these provisions, we conclude that the subcommittee did not violate any provision of the Public Health Code by rejecting the hearing referee's findings of fact and concluding, contrary to the referee, that appellant's actions warranted sanctions.

Because petitioner was not bound by the recommended findings of the administrative law judge, we find no merit in respondent's argument that petitioner erred by rejecting some of the administrative law judge's credibility determinations.

Finally, respondent argues that petitioner's implied conclusion that respondent was competent is inconsistent with petitioner's conclusion that respondent "violated a general duty consisting of negligence." We disagree.

MCL 333.16221 provides the following:

> The disciplinary subcommittee shall proceed under section 16226 if it finds that 1 or more of the following grounds exist:

> (a) . . . a violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees

or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may impair, the ability to safely and skillfully engage in the practice of the health profession.

> (b) Personal disqualifications, consisting of 1 or more of the following:

> (*i*) Incompetence.

"Incompetence" means "a departure from, or failure to conform to, minimal standards of acceptable and prevailing practice for a health profession, whether or not actual injury to an individual occurs." MCL 333.16106(1). In contrast, "[n]egligence is a well-recognized legal concept which describes conduct that falls below a standard of reasonable or due care." *Sillvery*, 145 Mich App at 686. "A failure to exercise due care contemplates an abdication of responsibilities or carelessness in executing one's duties." *Id.* Thus, negligence and incompetence are distinct bases for disciplinary action under MCL 333.16221, and we cannot conclude that petitioner's findings were inconsistent.

In sum, petitioner made credibility determinations and utilized its expertise in making findings of fact and conclusions of law. "[R]esolving conflicts in the evidence by making credibility determinations is not a basis for reversal of an administrative action." *Anderson*, 299 Mich App at 599. Because petitioner's findings of fact are supported by competent, material and substantial evidence on the whole record and petitioner's decision was not arbitrary and capricious, this Court must affirm petitioner's final order. See *Vanzandt*, 266 Mich App at 583.

Affirmed.

/s/ Anica Letica
/s/ Michael F. Gadola
/s/ Thomas C. Cameron

-10-