CHRISTY v PRESTIGE BUILDERS, INC

(CHRISTY v GLASS)

Docket No. 64590. Submitted March 3, 1981 (Calendar No. 6).—Decided December 23, 1982.

Thomas Christy and Lana Christy and other similarly situated owners of property located in a subdivision in Chocolay Township in Marquette County brought an action against Prestige Builders, Inc., Russell Young, an owner of Prestige, Gary Young, local office manager of Prestige, Leo Glass and Vivian Glass, platters of the subdivision, Anderson Well Drilling, Inc., and Art Anderson, on theories of express warranty, implied warranty, negligence, and fraud because the water supplies to their homes were unfit for normal residential use. A jury returned verdicts against all defendants except Art Anderson. The Marquette Circuit Court, Edward A. Quinnell, J., granted Leo Glass' motion for judgment notwithstanding the verdict on the issue of implied warranty, but denied his motion with respect to the issue of negligence. The Court of Appeals, D. F. Walsh, P.J., and Bronson and T. M. Burns, JJ., affirmed (Docket Nos. 77-5257, 77-5258). Leo Glass appeals.

In opinions by Justice Levin, joined by Justices Kavanagh and Williams, by Chief Justice Fitzgerald, and by Justice Coleman, joined by Justice Ryan, the Supreme Court held:

The vendor landowner had no common-law liability in negligence to subvendees of his vendee, nor any duties arising out of improvements made to the land. However, the vendor may be liable to the subvendees for violations of the Subdivision Control Act; while much of the testimony had to do with his obligations under that act, the issue was not adequately developed at trial or on appeal as a separate cause of action, and the case is remanded for amendment of the complaint and a new trial on that issue alone.

Justice Levin wrote:

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 77 Am Jur 2d, Vendor and Purchaser § 329.

Liability of vendor or grantor of real estate for personal injury to purchaser or third person due to defective condition of premises. 48 ALR3d 1027.

1. A land vendor who surrenders title, possession, and control of property shifts all responsibility for the land's condition to the vendee and is not liable for any harm resulting from defects existing at the time of sale except where he fails to disclose to the vendee any concealed condition known to him which involves an unreasonable danger, or where he actively conceals such a condition. The vendor is also liable to those outside the land after the sale for a dangerous condition on the land until the vendee discovers or should have discovered the condition and has a reasonable opportunity to take precautions. Under both exceptions, knowledge of a defect on the part of the vendee relieves the vendor of any duty or liability. In this case, Glass, the vendor, did not actively conceal the defect in the water from Prestige, the vendee. Prestige knew of the defect when the lots were sold to the plaintiffs. Prestige had the duty to inform the plaintiffs of the defect. Thus, the plaintiffs have recourse only against Prestige; Glass had no duty to the plaintiffs as Prestige's vendor. Glass was entitled to a judgment notwithstanding the verdict on the issue of negligence.

2. Glass had no duties to the plaintiffs arising from the improvement of the land. His only obligation relative to the improvement was to plat the land. All construction, drilling, and other improvements were the sole responsibility of Prestige. Even if Glass had made other improvements, any liability might have extended only to Prestige. No strict liability for the defect was established by the facts of the case.

3. The jury might have based its verdict relative to the negligence issue at least in part on a finding of a statutory violation by Glass as a land platter, given the central role that the alleged statutory violations played in the plaintiffs' case. The negligence alleged by the plaintiffs included as one instance violation of the statutes, rules, and regulations promulgated by the state and the Department of Public Health. Much of the testimony during trial had to do with Glass' obligation to insure an adequate quantity and quality of water under the Subdivision Control Act. However, whether Glass violated the act was subsumed in the issue of common-law negligence, the statutory violation being offered only as proof of common-law negligence. Because the plaintiffs may be entitled to relief on a basis which has not been sufficiently clear until review, the case is remanded for a new trial where the plaintiffs will be permitted to amend their pleadings to specifically allege a statutory duty by Glass and allowed to fully develop the legal and factual issues.

Chief Justice Fitzgerald, dissenting in part, wrote that the

issue of Glass' duty should not be resolved by reference to the doctrine of caveat emptor. Rather, liability should not be imposed because of superior policy considerations which oppose unwarranted restrictions on the sale of land.

Reversed and remanded.

Justice Coleman, joined by Justice Ryan, dissenting in part, wrote that the case should not be remanded for a new trial on the basis of an arguable legal theory not raised by the plaintiffs.

94 Mich App 784; 290 NW2d 395 (1980) reversed.

OPINION BY LEVIN, J.

1. VENDOR AND PURCHASER — DEFECTS IN PROPERTY — LIABILITY — DUTY TO WARN.

A vendor of land who surrenders title, possession, and control of real property shifts all responsibility for the land's condition to the vendee and is not liable for any harm resulting from defects existing at the time of sale except where he fails to disclose to the vendee any concealed condition known to him which involves an unreasonable danger or actively conceals such a condition; the vendor is also liable to those outside the land after the sale for harm resulting from a dangerous condition on the land until the vendee discovers or should have discovered the condition and has a reasonable opportunity to take precautions; under either exception, knowledge of a defect by the vendee relieves the vendor of any duty or liability.

2. VENDOR AND PURCHASER — DEFECTS IN PROPERTY — LIABILITY — DUTY TO WARN.

A vendor of real property who did not actively conceal a defect in the quality of water under the property from his vendee was not liable to persons who later purchased the property from the vendee for damages resulting from the defect where the vendee knew of the defect at the time it sold the property; the buyers' only recourse was against the vendee.

3. VENDOR AND PURCHASER — NEGLIGENCE — SUBDIVISIONS.

Plaintiffs who purchased land from a subdivision developer had no grounds for a common-law negligence claim against the developer's vendor for a defect in the quality of the water under the subdivision; however, where the vendor was the platter of the subdivision and the plaintiffs alleged that he had violated the requirements of the Subdivision Control Act to ensure an adequate quantity and quality of water as some proof of their negligence claim, they should be allowed to

amend their pleadings to address that claim and develop the legal and factual issues during a new trial (MCL 560.101-560.293; MSA 26.430[101]-26.430[293]).

OPINION CONCURRING IN PART AND DISSENTING IN PART BY
FITZGERALD, C.J.

4. VENDOR AND PURCHASER — NEGLIGENCE — LIABILITY.

*A vendor of real property who does not actively conceal a defect in the quality of water under the land should be held not liable to vendees of his vendee for harm resulting from the defect on the ground of superior policy considerations which oppose unwarranted restrictions on the sale of land, rather than on the doctrine of caveat emptor.*

CONCURRING OPINION BY COLEMAN, J.

5. VENDOR AND PURCHASER — NEGLIGENCE — THEORY OF ACTION —
APPEAL.

*An action in common-law negligence for harm resulting from a defect in the quality of the water under certain real property against the vendor of the subdivision developer who sold the property to the plaintiffs, which resulted in no relief on the common-law grounds, should not be remanded for development of an arguable legal theory which may provide a statutory basis for relief for the plaintiffs where that theory was neither raised nor briefed by the plaintiffs.*

*Bridges & Collins* (by *Dennis Shafer)* for the plaintiffs.

*Wisti & Jaaskelainen* (by *Michael E. Makinen)* for defendant Leo Glass.

LEVIN, J.

I

The principal issue in this case is whether a vendor landowner has a common-law duty to subvendees of his vendee to avoid negligent behavior. We hold that this landowner had no such duty and reverse the jury verdict against him of common-law negligence. However, there is an allegation in the plaintiffs' complaint, well supported by trial proofs, that this landowner violated

a statutory duty to them. But since that statutory violation was not pleaded, submitted to the jury, or argued on appeal as a separate cause of action, we decline to grant relief on this basis. Instead, a majority of this Court is of the opinion that this case should be remanded to the trial court with leave to amend the complaint to specifically allege this basis of liability and retry the case on that issue alone.

## II

On April 11, 1974, plaintiffs, numerous subdivision homeowners, initiated this action alleging that they had incurred property damage, inconvenience, and discomfort because the water supply in their recently purchased new homes was unfit for normal residential use. Named as defendants were Prestige Builders, Inc., which had built the homes, arranged for the drilling of wells that supplied water to them, and conveyed them to plaintiffs; Gary Young, the local office manager for Prestige; Russell Young, one of the three owners of Prestige; Leo and Vivian Glass, spouses who had platted the subdivision in which plaintiffs' homes were built and had conveyed the property to Prestige; Anderson Well Drilling, Inc., the company that had drilled the water wells; and Art Anderson, president of Anderson Well Drilling, Inc. The complaint asserted that plaintiffs were entitled to recovery on four grounds from each defendant: express warranty, implied warranty, negligence, and fraud.

The jury trial began on October 7, 1977. The record reveals that in 1970, Leo and Vivian Glass owned property in Chocolay Township near Marquette which they desired to sell. According to

trial testimony, they entered into an agreement, whose precise terms were not in evidence, with Prestige Builders, Inc., under which the Glasses would plat the property for a subdivision of some 37 lots. After platting, the property was to be conveyed to Prestige which would construct and sell homes and drill wells for their water supply. While Leo Glass was pursuing his obligation to plat, the agreement permitted Prestige to begin constructing homes, drilling wells, and soliciting buyers.

Under this agreement, Prestige built a model home in 1971 and several other homes soon thereafter. The wells drilled for the first five homes built created no water problems for their residents.

While Prestige proceeded to develop the property, Glass, pursuant to the Subdivision Control Act of 1967,[1] began the process of seeking approval for the subdivision. One important step in that process was the submission of a preliminary plat to the appropriate health department for approval of the water and sewer arrangements which contemplated a water well and septic tank for each house. The Marquette County Health Department approved his preliminary plat in November, 1971, on the basis of a site report submitted by Glass' engineer. Subsequent to that approval, Glass changed the preliminary plat, creating two subdivisions instead of one and reducing the total number of lots. The health department was not notified of this change.

In the summer of 1972, during which many of the plaintiffs' homes were under construction, the

---

[1] MCL 560.101-560.293; MSA 26.430(101)-26.430(293).

health department received complaints from residents about water quality in the development. The department wrote twice in August, 1972, to Leo Glass noting complaints about the water's palatability due to the presence of iron and tannins (organic matter). Copies of these letters were sent to Gary Young of Prestige Builders. The department advised Glass that it would require the drilling of test wells in order to answer the questions raised about the water's quality. The test wells were never drilled, existing economical methods to alleviate the problems were never used, and construction of homes and platting of the subdivision proceeded unabated.

Chocolay Township gave final approval to the plat on September 19, 1972, and the Glasses conveyed the lots to Prestige on November 17, 1972.

The presence of water quality problems in the subdivision was confirmed on or about November 17, 1972, when Bill Cole, the owner of ABC Well Drilling Co., which had drilled wells for three of the plaintiffs, notified Gary Young that he had encountered a gravel shelf at a depth of about 42 feet while drilling a well. The water that was above the shelf was good but that which was below it was not. Cole was unable to drill all of the wells in the subdivision, but he advised Young to tell future well drillers to drill only so far as was needed to encounter water without breaking through the shelf.

Young employed Anderson Well Drilling, Inc., to sink the remaining wells. Although Young told Anderson that penetrating the gravel shelf would create an odor problem, it soon became apparent that there was not sufficient water above the shelf

to supply all of the homes, and wells penetrating the shelf were drilled.

Subsequently, plaintiffs moved into their new homes and began having problems with their water supply. Plaintiffs from each complaining household recounted the problems that, in varying degrees, they had experienced: water that stained bathroom fixtures and laundry and that looked, tasted, and smelled so bad that they could not use it for cooking or drinking. When the plaintiffs complained of the water quality, some of them were told by Young of Prestige that filters would remedy the problems. In fact, filtering could not remedy them. Glass made no representations to the plaintiffs. Other testimony established that most of the remaining plaintiffs had some knowledge of the water problem before the plaintiffs moved into their homes.

Following the close of plaintiffs' proofs, all defendants moved for directed verdicts. All motions were denied except that of defendant Russell Young, who was then dismissed as a defendant. At the conclusion of trial, the jury returned verdicts in favor of all plaintiffs against all remaining defendants except Art Anderson in his individual capacity. Prestige Builders and Gary Young were found liable on the basis of express warranty, implied warranty, and negligence. Leo and Vivian Glass and Anderson Well Drilling, Inc., were all held liable for breach of implied warranty and negligence. The jury specifically apportioned responsibility for the damages awarded each plaintiff among the several defendants.

All defendants who had been found by the jury to be liable to plaintiffs filed post-trial motions for

new trial or judgment notwithstanding the verdict. The trial court denied all of the motions for new trial. In an opinion dated December 13, 1977, the lower court denied Prestige Builders' motion for judgment notwithstanding the verdict *in toto.* Gary Young's motion was granted with respect to the express warranty and implied warranty counts, but denied as to the count alleging negligence. The motions by Anderson Well Drilling and Vivian Glass were granted as to both counts on which they had been found liable to plaintiffs, implied warranty and negligence. Leo Glass was granted judgment notwithstanding the verdict only on the implied warranty count.

Of the defendants, only Leo Glass appealed. He challenged the lower court order insofar as it did not grant him judgment notwithstanding the verdict on the count of negligence, claiming he owed the plaintiffs no duty. The Court of Appeals affirmed the trial court in all respects.[2]

This Court granted Glass leave to appeal on October 10, 1980, on three issues: 1) did the Court of Appeals err in affirming the trial court's allowance of a post-trial amendment of the complaint?; 2) should he have been granted judgment notwithstanding the verdict on the negligence count because he owed no duty to these plaintiffs?; and 3) alternatively, did the Court of Appeals err in finding no abuse of discretion in the trial court's denial of a motion for new trial?

### III

### A

Glass repeats his contention made in the Court

[2] *Christy v Prestige Builders, Inc,* 94 Mich App 784; 290 NW2d 395 (1980).

of Appeals that the trial court erred in permitting plaintiffs' post-trial amendment of their complaint under GCR 1963, 118.3. After an examination of the record, we agree with the evaluation of the Court of Appeals that the trial judge did not abuse his discretion in granting the amendment.[3]

## B

This Court said in *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), that the elements of a common-law action for negligence are:

"(i) duty, (ii) general standard of care, (iii) specific standard of care, (iv) cause in fact, (v) legal or proximate cause, and (vi) damage."[4]

The first element, duty, is the pivotal one in this case.

"Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person."[5]

There are three possible relationships between Glass and these plaintiffs which could have imposed duties on him upon which liability could be premised. The first possible duty-creating relationship would arise simply from the sale of land by Glass, with the plaintiffs as subvendees of his vendee, Prestige. Second, Glass, as platter, could have duties imposed on him by the Subdivision Control Act for the benefit of these plaintiffs.

[3] See, *e.g., Graham v Thorman,* 354 Mich 629; 93 NW2d 264 (1958).

[4] 400 Mich 437; 254 NW2d 764.

[5] 400 Mich 438-439; 254 NW2d 765 (footnote omitted).

Finally, a duty-creating relationship could arise from efforts by Glass to improve the land by, for example, drilling water wells or building homes.

The third relationship, by analogy to the manufacture of chattels, has been held to create strict liability for defects.[6] However, this relationship is not established by the facts here, since Glass' only obligation was to plat the land—all construction, drilling, and so forth were the sole responsibility of Prestige. Even if Glass had improved the land, his liability might only extend to his vendee, Prestige. In all events, he had no duties to these plaintiffs arising from improvement of the land.

The first relationship has unanimously been held by the authorities not to constitute a duty-creating relationship. Under the common law, a land vendor who surrenders title, possession, and control of property shifts all responsibility for the land's condition to the purchaser. Caveat emptor prevails in land sales, and the vendor, with two exceptions, is not liable for any harm due to defects existing at the time of sale.

The first exception is the vendor's duty to disclose to the purchaser any concealed condition known to him which involves an unreasonable danger. Failure to make such a disclosure or efforts to actively conceal a dangerous condition render the vendor liable for resulting injuries. The second exception is that a vendor is liable to those outside the land for a dangerous condition on the land after the sale until the purchaser discovers or should have discovered it. Once the purchaser discovers the defect and has had a reasonable opportunity to take precautions, third parties such as subvendees have no further recourse against

---

[6] See Prosser, Torts (4th ed), § 95, pp 639-640. It does not appear that this Court has as yet addressed this question in this context.

the vendor. Under both exceptions, then, knowl-
edge of the defect on the part of the purchaser
relieves the vendor of any duty or liability.[7] Be-

[7] "The vendor of real property who parts with title, possession and
control of it ceases to be either an owner or an occupier. *Ordinarily,
therefore, he is permitted to step out of the picture and shift all
responsibility for the condition of the land to the purchaser.* As to
sales of land the ancient doctrine of *caveat emptor* lingered on, and is
still very largely in force * * *. This was perhaps for the reason that
great importance is attached to the deed of conveyance, which is
taken to represent the full agreement of the parties, and to exclude
all other terms; the lack of any standard marketable quality, or even
standard use, of land; and the fact that the vendee normally inspects
the property before purchase, and so is assumed to have accepted it as
it is. *Thus in the absence of express agreement or misrepresentation
the purchaser is expected to make his own examination and draw his
own conclusions as to the condition of the land; and the vendor is, in
general, not liable for any harm resulting to him from any defects
existing at the time of transfer.* Still less is he liable to other persons
who may come upon the land.

"* * * [T]wo exceptions to this once universal rule [have developed].
One of them, which finds support in the cases of lessors, and in the
Restatement of Torts, is that the vendor is at least under a duty to
disclose to the vendee any concealed conditions known to him which
involve an unreasonable danger to the health or safety of those upon
the premises, and which he may anticipate that the vendee will not
discover. If he fails to make such disclosure, he becomes liable for
injury resulting from such conditions to the vendee, or to members of
his family, or others upon the land in the right of the vendee. The
older view was to the contrary, and there are still courts whose latest
decisions deny even this obligation; but the duty should certainly
exist, if only because of the analogy to the 'something like fraud' in
permitting even a licensee to enter in the face of a concealed and
undisclosed hazard, and because the risk to the vendee is clearly
great in proportion to the relatively slight burden of disclosure cast
upon the vendor.

"The recognition of this duty of disclosure has thus far ended the
progress of any negligence liability of the vendor. * * *

"The other exception to the general rule of nonliability of the
vendor is found in a number of cases where the land, when it is
transferred, is in such condition that it involves an unreasonable risk
of harm to those outside of the premises. In nearly all of the decided
cases, this has amounted to either a public or a private nuisance, but
this is clearly not essential. In such a case the vendor remains
subject, at least for a reasonable time, to any liability which he would
have incurred if he had remained in possession, for injuries to persons
or property outside of the land, caused by such a condition. The
reason usually given is the obviously fictitious one that by selling the
land in such condition he has 'authorized the continuance of the
nuisance.' A more reasonable explanation would appear to be merely
that the vendor's responsibility to those outside of his land is re-

cause of this knowledge requirement, neither of the exceptions to the general rule of vendor nonliability exists in this case.

Here Glass' vendee, Prestige, knew of the water problems. Plaintiffs' relief as subvendees, if any, is therefore limited to Prestige—they have no recourse against Glass since his vendee knew of the water problems, and it was Prestige who had the duty to inform the plaintiffs of the problems. Further, Glass did not actively conceal the water problem from Prestige, to whom he owed a duty to disclose. Even if Glass had failed to disclose or actively concealed the water problems, his only liability would be to Prestige.

Therefore, Glass had no duty to these plaintiffs as land vendor.

The Court of Appeals apparently held that Glass had a "general duty 'to conform to the legal standard of reasonable conduct in the light of the apparent risk' ", citing *Moning*.[8] However, in so doing, the Court made the error *Moning* warned against: confusing the existence of a duty with the standard of conduct applied *if* a duty exists.[9] The

garded as of such social importance that he is not permitted to shift it, even by an outright sale. * * *

"*As to both of these exceptions under which the vendor is held liable for injuries occurring after possession is transferred, it seems obvious that there must be some time limit* upon the duration of the potential liability. A corporation, still in existence, can scarcely be required to pay for damages which occur a century after the grant. There are, however, very few cases which have considered the question. *The indications are that the vendor is no longer liable once the vendee has had a reasonable time to discover and remedy the condition, unless the vendor has actively concealed it, in which case, as in other instances of fraud, his liability will continue until actual discovery, and a reasonable time thereafter to take action.*" Prosser, fn 6 *supra*, § 64, pp 412-414 (footnotes omitted, emphasis added); see also 1 Restatement Torts, 2d, §§ 352-353, pp 234-238.

[8] *Christy*, 94 Mich App 795; 290 NW2d 400 (citing 400 Mich 443; 254 NW2d 767.)

[9] See 400 Mich 437; 254 NW2d 764.

quoted phrase from *Moning* does not create a duty, but defines the scope of the obligation created by an existing duty.[10]

The trial court should have granted Glass judgment notwithstanding the verdict on the negligence count.[11]

## IV

The possibility that Glass had a duty as land platter in this case is raised in the third count of the plaintiffs' complaint, where they alleged common-law negligence. One instance of negligence charged is violation of the "statutes, rules and regulations promulgated by the State of Michigan and the Department of Public Health".

Much of the testimony at trial had to do with the obligation of Glass as platter to ensure an adequate quantity and quality of water under the 1967 Subdivision Control Act.[12] However, the question whether Glass violated the act was subsumed in the issue of common-law negligence throughout this case. The alleged statutory violation was presented only as some proof of common-law negligence. The plaintiffs did not attempt to prove liability based solely on this alleged statutory violation and, of course, the trial court did not rule

---

[10] See 400 Mich 443; 254 NW2d 767.

[11] Because we hold that the trial court should have granted Glass judgment notwithstanding the verdict on the negligence count, we need not address the appellant's third issue on appeal: a request for a new trial which is styled as an alternative.

[12] MCL 560.101-560.293; MSA 26.430(101)-26.430(293). The act imposes many affirmative obligations on subdivision platters such as Glass for the benefit of subdivision residents. It also provides express civil and criminal penalties for its violation, see MCL 560.264; MSA 26.430(264) (criminal); MCL 560.267; MSA 26.430(267) (civil), and it is arguable that implied causes of action exist for the act's intended beneficiaries.

on the many legal issues surrounding such liability, nor did the jury expressly decide whether the facts warranted relief on this basis. It follows that none of the many legal and factual issues surrounding this question were briefed or argued before this Court.

Since the issues surrounding this basis of liability were not briefed or argued before us and because our review of the record reveals that many factual and legal questions were not addressed at trial,[13] we cannot justifiably order relief on this basis.

Given the central role the alleged statutory violations played in the plaintiffs' case, the jury might well have based its negligence verdict at least in part on a finding of a statutory violation. Our holding that Glass owed no common-law duty to these plaintiffs as a vendor landowner removes the legal force of any such finding. However, the existence of a statutory duty would give that finding legal force. Thus the plaintiffs may be entitled to relief, but on a basis that has not been sufficiently clear in the case until now. Permitting amendment and a new trial will allow full development of the legal and factual issues, and will not prejudice Glass.

Accordingly, we reverse and remand for proceedings consistent with this opinion.

KAVANAGH and WILLIAMS, JJ., concurred with LEVIN, J.

---

[13] Glass did not testify. While there is testimony from officials of the Marquette County Health Department about the water problems, there is no testimony from Chocolay Township officials as to why they approved the plat despite those problems. Did the township know of the problems? Were they misled as to their nature? These and many, many other legal and factual issues lie unresolved in the record.

FITZGERALD, C.J. *(concurring in part and dissenting in part).* This tort action presents the novel question whether a vendor landowner may be held liable on a common-law negligence theory to the vendees of the landowner's vendee. I concur separately because I disagree with my brother LEVIN's treatment of the issue of duty.

Justice LEVIN hypothesizes three possible duty-creating relationships. The third, even if accepted as correct, is not supported by the facts of the instant case. The second, with which I concur, is the basis for a remand for a new trial. The first (a sale of land to defendant, Prestige Builders, plaintiffs' vendor, and thence to plaintiffs) is said to be avoided by operation of the doctrine of caveat emptor. I am not persuaded by this logic.

Caveat emptor is a doctrine of long standing in Michigan. It owes its genesis to the idea that a buyer of real property, dealing at arm's length with the vendor, would physically inspect the land before consummating the transaction. Such a buyer would not later be heard to complain that the land was not as expected.

The harshness of this rule encouraged limited exceptions. Quoting Prosser as authority, Justice LEVIN cites two exceptions, but neglects to include their policy rationale: "an increased regard for human safety, and a sadly needed improvement in bargaining business ethics * * *". Prosser, Torts (4th ed), § 64, p 412. Although "human safety" cases have typically involved dangerous conditions on the land, read broadly human safety could certainly be construed to include water unfit for human consumption and normal human use, as here.

Even concluding, as I do, that the doctrine of caveat emptor does not resolve the duty issue in

this case, it does not follow that the defendant landowner should be liable in negligence to the vendees of his vendee. On the unusual facts of this case, title to the land did not pass to the builder until development had progressed significantly. In addition, at the time of the conveyance to the builder, defendant landowner had known for at least two months that the water was bad. Thus, these plaintiffs certainly meet the loose test of duty in *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), and the stricter test recently articulated in *Antcliff v State Employees Credit Union,* 414 Mich 624; 327 NW2d 814 (1982).

I would not impose liability in negligence because of competing and, I believe, superior policy considerations which oppose unwarranted restrictions on the sale of land. When defendant landowner sold the land, he was aware of potential problems with the water. Even though it was apparent that the builder intended to develop the land, it certainly could not be said that the builder might not or would not cure the water problem before reselling. And if the problem proved insoluble, it could not be said that the builder would continue subdividing. Despite these uncertainties, the Court of Appeals held that this prior vendor had a common-law duty to the vendees of his vendee. Such a holding adversely affects all landowners, particularly farmers, who would sell to a developer. I do not support such an expansion of liability due to its predictably negative effect on the sale of land for development purposes.

COLEMAN, J. I concur in my colleague's opinion except Part IV, to which I dissent. The remand is based on an "arguable" legal theory, see fn 12,

that plaintiffs have not raised. The role of this Court is to decide cases, not create them.

RYAN, J., concurred with COLEMAN, J.

RILEY, J., took no part in the decision of this case.