M&D, INC v McCONKEY

Docket No. 175201. Released November 14, 1997, at 9:00 A.M.; vacated November 26, 1997.

Before: YOUNG, P.J., and CORRIGAN and M. J. CALLAHAN*, JJ.

YOUNG, P.J. Plaintiffs purchased on an "as is" basis commercial property on West Michigan Avenue in Jackson, Michigan. Following its purchase, the property suffered a damaging flood. Plaintiffs later discovered that the property had an undisclosed history of significant flooding. Plaintiffs argue that both the sellers and the real estate agents are liable for fraud, misrepresentation, and negligence for failing to disclose this flooding problem. In addition, plaintiffs claim that defendant State of Michigan, Department of Transportation (MDOT), is liable for failing to maintain or properly construct a drain located adjacent to the property. Plaintiffs contend that this failure causes water from heavy rainfalls to flood their property.

Plaintiffs appeal as of right from a March 1994 jury verdict rendered in favor of defendant Relenco Partnership and its individual partners. Plaintiffs also appeal the trial court's previous order dismissing plaintiffs' fraud and misrepresentation claims against defendant McConkey Real Estate Company and defendants W. B. McConkey, Barbara C. Weed, and Richard Paschack, individually; the order dismissing plaintiffs' trespass-nuisance claim against the MDOT; the order dismissing the claims of plaintiffs Donald Gundle, Marie J. Gundle, and Donna Gundle-Krieg; and the order dismissing the fraud and misrepresentation claims of plaintiffs M&D, Inc., and Donmar, Inc., against defendant Relenco Partnership and its individual partners.[1]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] This opinion focuses primarily on plaintiffs' appeal regarding these claims and defendants. Plaintiffs have also appealed from other orders

But for our obligation under MCR 7.215(H), we would affirm in their entirety the judgment and orders plaintiffs have appealed. However, being so constrained, for the reasons stated herein, we affirm in part, reverse in part, and remand for further proceedings.

I

### THE PARTIES, NATURE OF THE DISPUTE, AND PROCEDURAL HISTORY IN THE CIRCUIT COURT

#### A. PLAINTIFFS

Plaintiffs M&D, Inc., and Donmar, Inc., are corporate entities formed by individual plaintiffs Donald and Marie Gundle. M&D was formed for the purpose of purchasing the property in question. Donmar was formed to operate a pet supply franchise, "Pet Supplies Plus," and to lease from M&D store space for the franchise in the commercial building located on the property. Plaintiff Donna Gundle-Krieg was the vice president and general manager of Donmar.

#### B. DEFENDANTS

Defendant Relenco Partnership owned the property at 1715 W. Michigan Avenue from 1974 until January 1991, when it sold the property to plaintiff M&D. Relenco Partnership is now dissolved. At the time of the sale of the property, the partnership included the following partners who are relevant for purposes of this opinion: defendants W. B. McConkey and Barbara C. Weed. Unless otherwise indicated in this opinion, "Relenco" refers to the partnership and its individual partners.

Defendant McConkey Real Estate Company handled the listing and sale of the property. W. B. McConkey is a licensed real estate broker and owner of McConkey Real Estate Company. Barbara Weed is the treasurer of the real estate agency, and defendant Richard Paschack is the real estate salesperson involved in the sale of the property. Unless otherwise indicated in this opinion, "McConkey Real Estate" refers to the real estate agency, its officers, employees, and agents.

Defendant MDOT constructed the drain on Michigan Avenue that connected a catch basin adjacent to plaintiffs' property. The drain was constructed in 1972. This drain is a component of a three-part drainage sys-

---

dismissing their claims against defendants Pamela Sullivan and Dana Aymond. However, both defendants were dismissed by the stipulation of the parties in the underlying action. Plaintiffs also appealed the dismissal of their claims against defendant Carl Engineers, Inc., and defendants Linda Carl and C. Donovan Carl, in their capacity as officers and shareholders of Carl Engineers, Inc. Since plaintiffs filed their appeal, an order was entered pursuant to the parties' stipulation regarding the dismissal with prejudice of the appeal and cross appeal concerning Carl Engineers, Inc., Linda Carl, and C. Donovan Carl in their capacity as officers and shareholders of Carl Engineers, Inc. Neither these defendants nor claims related to these defendants will be discussed in this appeal.

tem. The other components include the county drainage system and the private drainage system of Westwood Mall located across from plaintiffs' property.

### C. THE REAL ESTATE TRANSACTION

The property in question was purchased by plaintiff M&D in January 1991 on an "as is" basis from defendant Relenco. The property is located on the southeast corner of 18th Street and Michigan Avenue in Jackson, Michigan. The property included an existing building that had been used as commercial property for over thirty years. The building was situated at a low point on the property and below Michigan Avenue.

The purchase agreement documents contained various disclaimers denying seller representations and warranties about the property and imposing upon the purchaser the obligation to inspect the property and the responsibility for making any corrections required by those inspections. Relenco also refused to prepare a seller's disclosure statement and made this refusal an explicit part of the purchase agreement. Indeed, on the face of the preprinted seller's disclosure statement, the following "as is" disclaimer appears: "Owner has never occupied this property. No representations or warranties implied as to condition. Property being sold in 'as is' condition."

### D. THE NATURE OF THE FLOODING PROBLEM

Before the purchase, plaintiffs apparently never asked whether the property had ever experienced flooding and defendants never made any representation concerning flooding to plaintiffs. Before purchasing the property, and consistent with their obligation under the purchase agreement to inspect the property, plaintiffs hired Dennis Krieg, the husband of plaintiff Donna Gundle-Krieg, to inspect the property. Krieg concluded that there was no evidence of flooding on the property.

After purchasing the property, M&D added an addition to the building and then leased the property to plaintiff Donmar for the operation of the pet supply franchise. Donmar opened the store in June 1991. In late August 1991, the property flooded after a heavy rainfall. Witnesses described the flooding as coming from Michigan Avenue in "waves." Plaintiffs produced evidence at trial that inventory and store displays were among the items destroyed. They also introduced evidence that the building and equipment inside required extensive repairs after the flood.

According to the proofs adduced at trial, the property had experienced flooding problems over many years. Residential neighbors around the property testified that the property flooded after a heavy rainfall and some residents had observed flooding as early as nineteen years before the instant action. Former tenants of the building testified that they experienced flooding and discontinued their businesses at that location because of the flooding problem. Defendant W. B. McConkey, Relenco's managing partner, testified that, after the partnership purchased the property in 1974, the property experienced a "puddling problem" that was later fixed. However, McConkey also acknowledged that he had witnessed flooding on the property.

### E. PROCEDURAL HISTORY

Plaintiffs commenced this action in October 1992, raising breach of contract, negligence, innocent misrepresentation, and fraud claims against Relenco and McConkey Real Estate. Plaintiffs alleged that these defendants were aware that plaintiffs intended to use the property for a retail store and, on this basis, were thus liable for failing to disclose that the property had a flooding problem. Plaintiffs also sued the MDOT for trespass-nuisance, alleging that the flooding was caused by the MDOT's failure to properly construct or maintain its drain.

Pursuant to the defendants' various motions for summary disposition, the circuit court dismissed plaintiffs' claims of fraud and misrepresentation against defendant McConkey Real Estate and plaintiffs' claims of trespass-nuisance against the MDOT. The circuit court also dismissed the claims of all the individual plaintiffs. Finally, the circuit court granted Relenco's motion for partial summary disposition, dismissing plaintiffs M&D and Donmars' fraud and innocent misrepresentation claims under MCR 2.116(C)(10). However, the circuit court allowed M&D and Donmar to proceed against Relenco on a negligence cause of action as recognized in *Christy v Prestige Builders, Inc*, 415 Mich 684; 329 NW2d 748 (1982). The circuit court further ordered that M&D and Donmar were limited in the negligence action to the recovery of damages incurred as a direct result of Relenco's failure to disclose the flooding condition but which damages occurred before the time that M&D, as purchaser, discovered or should have discovered the flooding condition.[2]

Trial commenced in March 1994 against Relenco on the *Christy* negligence claim. After the parties rested, the circuit court granted Relenco's motion for a directed verdict with respect to M&D's claims on the basis that M&D suffered no damages because it had continued to receive lease payments from plaintiff Donmar. The jury later returned a verdict of no cause of action in favor of Relenco and against plaintiff Donmar. Consequently, the trial court entered judgment in favor of Relenco in April 1994. This appeal ensued.

II

### M&D AND DONMARS' CLAIMS

On appeal, plaintiffs primarily seek, on several alternative theories, reversal of the trial court's pretrial rulings and a retrial against Relenco and McConkey Real Estate for their failure to disclose the flooding condition on the property. As noted, plaintiffs contend that these defendants were aware that plaintiffs intended to operate a retail store on the property and, given defendants' knowledge of the severe flooding condition,

---

[2] In October 1993, plaintiffs filed an application for leave to appeal from the circuit court's disposition of the motion for summary disposition. This Court denied the application in an unpublished order, entered November 3, 1993 (Docket No. 168980).

defendants were legally obligated to disclose this condition before the sale of the property.

As an initial matter, we hold that the trial court did not err in dismissing the claims of the individual plaintiffs. Because the individual plaintiffs have not alleged claims distinct from those of their corporate entities, they lacked standing to sue defendants. The standing doctrine provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee. *Michigan Nat'l Bank v Mudgett*, 178 Mich App 677, 679; 444 NW2d 534 (1989). While an exception exists where the individual can show a violation of a duty owed directly to the individual that is independent of the corporation, *id.*, that exception is inapplicable here. The exception does not arise merely because the alleged violation resulted in injury to *both* the corporation and the individual; rather, it is limited to cases in which there is a breach of duty that is owed to the individual personally. *Id.* at 679-680. Therefore, the trial court correctly granted summary disposition to defendants with regard to all the individual plaintiffs' claims.[3]

### A. FRAUD AND INNOCENT MISREPRESENTATION

We first address M&D and Donmars' contention that the trial court erred in granting summary disposition to Relenco, as owner-vendor, with regard to their fraud and misrepresentation claims. This Court reviews a motion for summary disposition de novo. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). MCR 2.116(C)(10) permits summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *Id.* A court reviewing such a motion, therefore, must consider the pleadings, affidavits, depositions, admissions, and any other admissible evidence in favor of the party opposing the motion, grant that party the benefit of any reasonable doubt, and determine whether there is a genuine issue of disputed fact. *Id.*

M&D and Donmar concede that the property in this case was sold in an "as is" condition. As explained by our Supreme Court, "as is" clauses operate to waive those implied warranties that accompany the sale of property. *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 32, n 15; 331 NW2d 203 (1982). "Since implied warranties protect against latent defects, an 'as is' clause will impose upon the purchaser the assumption of the risk of latent defects . . . ." *Id.* However, it is well recognized that the exis-

---

[3] We note that our analysis of plaintiffs' appellate issues is made difficult by plaintiffs' failure to either (1) identify their claims with any sort of specificity or (2) distinguish between the individual plaintiffs and the corporate plaintiffs M&D and Donmar.

tence of an "as is" clause does not preclude a purchaser in a real estate transaction from alleging fraud or misrepresentation. *Id.* at 32, n 16. The reason why fraud should vitiate an "as is" clause is reasonably obvious and axiomatic: contracts induced by fraud always have been voidable. See, e.g., *Dunn v Goebel Brewing Co*, 357 Mich 693, 697; 99 NW2d 380 (1959).

There are essentially three different theories that can be used to establish fraud in a given case: (1) traditional common-law fraud, (2) "silent fraud," and (3) "innocent misrepresentation." We believe that plaintiffs failed to present sufficient evidence under any of the theories to create a genuine issue of material fact for trial.

### 1. COMMON-LAW FRAUD

As a general rule, actionable fraud consists of the following elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976); *Irwin v Carlton*, 369 Mich 92, 94; 119 NW2d 617 (1963); *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919); see also *Arim v General Motors Corp*, 206 Mich App 178, 195; 520 NW2d 695 (1994).

In this case, the trial court, in ruling with regard to Relenco's motion for summary disposition, held that, concerning the flooding problem of the property. Relenco made no material "representation" of fact to plaintiffs upon which a common-law fraud claim could rest. Indeed, plaintiffs failed to present evidence that defendants made *any* affirmative representations concerning the nature of the flooding problem on the subject property. We agree with the circuit court's reasoning that, without a *representation,* plaintiffs could not maintain an action for common-law fraud because proof of some *false representation* made with an intent to deceive was a necessary element of their prima facie case.

### 2. INNOCENT MISREPRESENTATION

A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation. *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 118; 313 NW2d 77 (1981). The innocent misrepresentation rule represents a species of fraudulent misrepresentation but has, as its distinguished characteristics, the elimination of the need to prove a *fraudulent purpose* or an intent on the part of the defendant that the misrepresentation be acted upon by the plaintiff, and has, as added elements, the necessity that it be shown that an unintendedly false representation was made in connection with the making of a contract and that the injury suffered as a consequence of the misrepresentation inure to the benefit of the party making the misrepresentation. *Id.* at 118. Thus, the party alleging innocent

misrepresentation is not required to prove that the party making the misrepresentation intended to deceive or that the other party knew the representation was false. *Id.* at 117. Finally, in order to prevail on an innocent misrepresentation claim, a plaintiff must also show that the plaintiff and defendant were in privity of contract. *Id.* at 118-119.

In the present case, only M&D was in privity of contract with Relenco, and, therefore, it is the only plaintiff that could raise an innocent misrepresentation claim against Relenco. Moreover, as the trial court concluded, because Relenco made no false, or other, representation regarding the condition of the property, neither corporate plaintiff could maintain a claim of innocent misrepresentation. *Id.* at 118.

### 3. "SILENT FRAUD"

"Silent fraud," also known as fraud by nondisclosure or fraudulent concealment, is a commonly asserted, but frequently misunderstood, doctrine. This is primarily because most fraud claims are based upon alleged affirmatively stated false representations of material fact. A claim of "silent fraud" requires a plaintiff to set forth a more complex set of proofs. In *Lorenzo v Noel*, 206 Mich App 682, 684-685; 522 NW2d 724 (1994), this Court gave the following explanation of the so-called "silent-fraud" doctrine:

> " 'A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud.' " *Williams v Benson*, 3 Mich App 9, 18-19; 141 NW2d 650 (1966), quoting *Tompkins v Hollister*, 60 Mich 470, 483; 27 NW 651 (1886). Thus, "the suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud." *Williams* at 19.

In other words, Michigan courts have recognized that silence cannot constitute actionable fraud *unless* it occurred under circumstances where there was a legal duty of disclosure. See *Black, supra* at 125.

M&D and Donmar argue that dismissal of their fraud and misrepresentation claims was improper because Relenco, and specifically W. B. McConkey, its managing partner, knew about the history of the flooding problem and its severity and failed to disclose this concealed condition to plaintiffs before the sale of the property. Relying on *Shimmons v Mortgage Corp of America*, 206 Mich App 27; 520 NW2d 670 (1994), and *Clemens v Lesnek*, 200 Mich App 456; 505 NW2d 283 (1993), plaintiffs argue that a fraud claim can be maintained where the purchaser is able to prove that the vendor knew about a defective condition and did not disclose it to the purchaser. We do not believe that this argument is supported by existing Supreme Court precedent.

Our Supreme Court has recognized a vendor's duty to disclose material facts when the vendor and purchaser have generally discussed the condition at issue—when the purchaser has expressed some particularized con-

cern or made a direct inquiry—and the seller fails to fully disclose the material facts within the seller's knowledge related to the condition and the buyer detrimentally relies upon the resulting *misdirection*. *Groening v Opsata*, 323 Mich 73; 34 NW2d 560 (1948). A vendor also has a duty to disclose " 'subsequently acquired information which he recognizes as rendering untrue, or misleading, previous *representations* which, when made, were true or believed to be true.' " *Black, supra* at 127 (emphasis added; citation omitted).

In *Groening, supra* at 77, when the plaintiffs considered purchasing a house built on a bluff, they asked the defendants whether the house was built too close to the bluff and whether, as a result, the house was in a dangerous position. The plaintiffs also told the defendants that they had been warned that the bluff was breaking off and that the whole property would eventually collapse. *Id.* at 78. The defendants responded that the house was not too close and that the bluff was perfectly safe. *Id.* at 78. One year after the purchase, the bluff completely eroded, and the evidence indicated that the defendants knew at least two years before the sale that the bluff had been eroding. *Id.* at 79.

Recognizing that "concealment of material facts that one under the circumstances is bound to disclose may constitute actionable fraud," *id.* at 83, the Court explained that the defendants' responses created a false impression equivalent to an express and intentional misrepresentation:

> [The defendants] made replies to plaintiffs' specific inquiries, which replies did not bring forth the facts that plaintiffs were seeking to learn, but were in such form as naturally tended to reassure plaintiffs and to cause them to proceed on the assumption that the property was not in any danger from erosion. Under such circumstances the concealment of the true facts and the deliberate creating of false impressions and inferences is the equivalent of an express and intentional misrepresentation.
>
> *     *     *
>
> In replying to plaintiffs' inquiries concerning the property it was the duty of defendants to state the facts called for in accordance with their knowledge of the situation. Their replies were well calculated to create the impression that they were doing so. Actually, however, they were, as the jury found, guilty of misrepresentation. Such misrepresentation lay in the positive misstatements made and in the failure to give the true facts while ostensibly doing so. [*Id.* at 82-84.]

Accordingly, the touchstone of liability for misdirection or "silent fraud" is that *some* form of representation has been made and that it was or proved to be false. In other words, we believe that, at least as applied to fraud cases, there is no general inchoate duty to disclose all hidden defects.

In *Wolfe v A E Kusterer & Co*, 269 Mich 424; 257 NW 729 (1934), the Supreme Court explained the distinction between nondisclosure generally

and nondisclosure that is equivalent to an affirmative fraudulent misrepresentation:

> "In an action of deceit, it is true that silence as to a material fact is not necessarily, as matter of law, equivalent to a false representation. But mere silence is quite different from concealment; *aliud est tacere, aliud celare*; a suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. *The gist of the action is fraudulently producing a false impression upon the mind of the other party.*" [*Id.* at 427-428, quoting *Stewart v Wyoming Cattle Ranche Co*, 128 US 383, 388 [9 S Ct 101; 32 L Ed 439 (1888)] (emphasis added).]

Our review of Michigan Supreme Court precedent regarding this issue reveals that, in every case, the fraud by nondisclosure was based upon statements by the vendor that were made in response to a specific inquiry by the purchaser, which statements were in some way incomplete or misleading. See, e.g., *Nowicki v Podgorski*, 359 Mich 18; 101 NW2d 371 (1960); *Sullivan v Ulrich*, 326 Mich 218; 40 NW2d 126 (1949); *Wolfe, supra.*

In the instant case, the documents of the sale transaction contain the "as is" clause and other explicit statements disclaiming seller representations and warranties about the condition of the property. While M&D and Donmar allege that Relenco knew about the flooding condition but did not disclose it, plaintiffs have not alleged facts establishing that Relenco had a duty to disclose its knowledge of the flooding. Plaintiffs offered no proof that they even asked Relenco or other defendants questions that might arguably have imposed on defendants the obligation to disclose the historical flooding on the property or risk that plaintiffs might be misled in some fashion about this issue. Consequently, Relenco was never put to the trouble of lying about, or otherwise concealing, its knowledge of the problem. Therefore, plaintiffs could not prove that Relenco made a representation or omission that left them with the distinct impression that the property did not have a flooding condition.[4]

---

[4] We note that plaintiffs' failure even to inquire about the flooding issue occurred within the context of the parties' agreement that included express disclaimers that Relenco made "no representations" regarding the condition of the land and another statement *expressly waiving the requirement of a disclosure statement.* Lastly, the sale of the property was also conditioned upon M&D's inspection of the property, which M&D did undertake, albeit without success in discovering evidence of past flooding.

## B. THE *CHRISTY* NEGLIGENCE RULE

Having dismissed M&D and Donmars' fraud and innocent misrepresentation claims, the trial court allowed them to proceed to trial on a *Christy*-based negligence claim. Although plaintiffs do not challenge on appeal the resulting directed verdict against M&D and the jury's finding of no cause of action with respect to Donmar, we will, for purposes of our analysis of the fraud issue, discuss *Christy*'s applicability in the case at bar. As stated previously, in real estate transactions involving an "as is" clause, the risk of loss attributable to conditions on the land shifts from the seller to the purchaser. *Clemens, supra* at 460. Further, an "as is" clause does not preclude a plaintiff from alleging fraud or misrepresentation. *Lenawee, supra* at 32, n 16. In *Christy, supra* at 694, our Supreme Court carved out two additional negligence exceptions to the general rule that caveat emptor prevails in land sales. The *Christy* Court explained:

> Under the common law, a land vendor who surrenders title, possession, and control of property shifts all responsibility for the land's condition to the purchaser. Caveat emptor prevails in land sales, and the vendor, with two exceptions, is not liable for any harm due to defects existing at the time of sale.
>
> The first exception is the vendor's duty to disclose to the purchaser any concealed condition known to him which involves an *unreasonable danger*. Failure to make such a disclosure or efforts to actively conceal a dangerous condition render the vendor liable for resulting injuries. The second exception is that a vendor is liable to those outside the land for a *dangerous condition* on the land after the sale until the purchaser discovers or should have discovered it. [*Id.* at 694 (emphasis added).]

Consequently, failure to disclose such a dangerous condition renders the vendor liable in negligence to the purchaser and its subvendees until the purchaser discovers or should have discovered the condition and has had a reasonable opportunity to take precautions. *Id.* "Under both exceptions, then, knowledge of the defect on the part of the purchaser relieves the vendor of any duty or liability." *Id.* at 695.

Only the first exception is at issue in the instant case. Both M&D, as the purchaser, and Donmar, its lessee and Relenco's subvendee, could maintain an action under *Christy*, i.e., alleging that the defendants were negligent in failing to disclose a concealed condition involving unreasonable danger. *Id.*, at 694. In order to establish liability, plaintiffs were required to convince the jury that Relenco knew about the flooding condition, that it failed to disclose the flooding condition, and that the flooding condition was a concealed defect that involved an unreasonable danger. *Id.* at 694-695.[5]

---

[5] As a corollary claim, plaintiffs M&D and Donmar contend that the trial court improperly limited the damages they could seek at trial to those flowing directly from the failure to disclose, and excluded damages

III

On the basis of the foregoing analysis, we would conclude that M&D and Donmar cannot establish a claim for any species of fraud and that, as the trial court recognized, their only recourse in this matter was to seek relief against Relenco under the *Christy* negligence standard. Consequently, we would affirm the trial court's decision with regard to this issue. However, we are required to follow *Shimmons, supra,* which we reluctantly conclude is dispositive of this issue, under MCR 7.215(H). Because we believe that *Shimmons* is contrary to Supreme Court authority, we declare a conflict with it pursuant to MCR 7.215(H).

## A. THE *SHIMMONS* RULE

In *Shimmons, supra* at 28, the plaintiff purchased a house "as is" from the defendant. Sometime before the sale, the township building department inspected the house, declared it uninhabitable, and issued the defendant a repair notice and order. However, the defendant never told the plaintiff about, and thus failed to disclose, the existence of the repair order. *Id.* A panel of this Court held that "[f]raudulent concealment is established by showing that the hidden defect (which need not be unreasonably dangerous) was known to the vendor and that the purchaser had no knowledge of it." *Id.* at 29. The Court concluded that the repair notice and order was a latent defect that was required to be disclosed. *Id.*

The *Shimmons* Court relied exclusively on *Clemens, supra,* as the basis for its holding. However, *Shimmons* misinterpreted the holding in *Clemens.*[6] The *Clemens* Court recognized the general rule that an "as is" clause

---

that occurred after M&D became aware of the flooding. Plaintiffs specifically take issue with the fact that they were not allowed to seek mental anguish damages or the diminution in property value. This issue is moot because, as noted in the text, the trial court directed a verdict against M&D and the jury returned a verdict of no cause of action against Donmar. See *Young v Barker,* 158 Mich App 709, 729; 405 NW2d 395 (1987).

[6] We also believe that the facts in *Clemens* are distinguishable from those in *Shimmons.* In *Clemens,* the plaintiffs were planning on purchasing a house from the defendants and asked about the condition of the roof and the septic system. The defendants represented that the roof had minor leaks but that it was in good condition, and that the septic system was pumped annually. *Id.* at 461-462. After the property was sold, the plaintiffs learned that the roof was leaky and that the septic tank needed replacement. *Id.* According to the evidence, inspections before the sale of the property disclosed possible roof leakage and a letter from the county indicated that old septic tanks were in need of replacement. *Id.* In *Clemens,* the plaintiffs successfully established a prima facie case of fraud because they established not only that there was a concealed defective condition but also, and most important, they demonstrated that (1) there had been a discussion with the seller about the condition *at issue in the*

did not preclude a purchaser from alleging that the seller committed fraud before the parties entered a binding agreement. *Clemens, supra* at 460, citing *Lenawee, supra* at 32, n 16. The Court then discussed the *Christy* requirement that, in a real estate action between a buyer and a seller *based on negligence*, a plaintiff had to prove that undisclosed hidden defects were unreasonably dangerous in order to recover damages despite the existence of an "as is" clause. *Clemens* correctly recognized that a purchaser is not required to prove that the hidden defect involved an unreasonable danger in order to recover damages for *fraudulent concealment. Clemens, supra* at 460-461.[7] Thus, *Clemens* is entirely consistent with our Supreme Court's decisions regarding the requirements concerning the fraud and negligence exceptions to the as is clause.

*Shimmons* not only misstated the holding in *Clemens*, but, in doing so, announced a general duty of disclosure never previously recognized in Michigan. What *Shimmons* apparently ignored is the statement in *Clemens* that an "as is" clause may be ineffective where a seller makes fraudulent *representations. Clemens, supra* at 460. Thus, *Clemens* provides no support for the *Shimmons* holding that a purchaser can establish fraud in a real estate transaction simply by proving that a vendor knew about a concealed defective condition and did not disclose it. See *Shimmons, supra* at 29.

Indeed, the effect of *Shimmons* is to make fraud, an intentional tort, easier to prove than a *Christy* negligence action. Under *Shimmons*, a plaintiff can avoid the *Christy* requirement that the hidden defect be unreasonably dangerous simply by alleging that the nondisclosure at issue was a product of fraud rather than negligence. Correlatively, under *Shimmons*, a plaintiff need not establish that any form of misrepresentation (whether affirmative or misdirectional in nature) was made by the seller. In sum, it appears that *Shimmons* recognizes a new action for fraud merely upon a showing that, incident to an "as is" sale of property, a latent condition was not disclosed by the seller. The *Shimmons* panel gave no explanation for changing the elements of fraud propounded by

---

*case*, and (2) the seller's "response" concerning the condition was openly false or misleading by omission. In contrast, the only evidence in *Shimmons* was that the defendant merely failed to disclose the existence of the repair notice.

Consequently, in *Shimmons* there were no proofs offered to show (a) that the seller made any representation (affirmative or misdirectional) concerning the undisclosed condition or (b) that the buyer inquired about the condition at issue, thereby putting the seller at risk of making a fraudulent misrepresentation or some other form of actionable representation. We conclude that there was no factual predicate for the *Shimmons* panel to conclude that the plaintiff had made a prima facie showing of fraud sufficient to withstand summary disposition.

[7] We agree with this holding. Clearly, proof that a defect was unreasonably dangerous is not an element of a fraud action. See *Arim, supra* at 195.

our Supreme Court. We believe that *Shimmons* failed to follow existing, controlling precedent.

Notwithstanding our disagreement with *Shimmons*, because we cannot in a principled fashion distinguish it, we are bound to follow it under MCR 7.215(H). Consequently, we are compelled to reverse the trial court's order dismissing M&D's *Shimmons*-based fraud claim against Relenco Partnership and its individual partners and remand this case to allow M&D, as the purchaser, to pursue that claim below. However, we decline to extend the *Shimmons* rule outside the context of real estate transactions between a vendor and a purchaser. Accordingly, we affirm the trial court's order dismissing the fraud claim of plaintiff Donmar as M&D's lessee and Relenco's subvendee.

IV

M&D AND DONMARS' FRAUD AND MISREPRESENTATION CLAIMS AGAINST
MCCONKEY REAL ESTATE

We next conclude that the trial court properly dismissed the fraud and misrepresentation claims of both M&D and Donmar brought against defendant McConkey Real Estate Company as well as defendants Richard Paschack, W. B. McConkey, and Barbara Weed, in their capacity as real estate brokers and licensees.

This Court has recognized that sellers' real estate agents, by virtue of their agency relationship as agents for the sellers, do not have a general duty to disclose to purchasers material defects involving the property. *McMullen v Joldersma*, 174 Mich App 207, 212; 435 NW2d 428 (1988). Real estate agents do, however, remain liable for common-law fraud or misrepresentation based upon false material misrepresentations (necessarily including incomplete or misleading statements creating a false impression) that are made with fraudulent intent. See *Price v Long Realty, Inc*, 199 Mich App 461, 470; 502 NW2d 337 (1993). While *Shimmons* holds that a *vendor's* liability for fraud can be based upon the mere failure to reveal undisclosed defects, we decline to extend the *Shimmons* rule of liability to defendant Relenco's real estate agents.

Plaintiffs M&D and Donmar also argue that the administrative rules pertaining to real estate licensing create a duty of disclosure, and, therefore, civil liability. However, other than the administrative rules themselves, plaintiffs do not cite any authority in support of their argument. Therefore, we deem this issue effectively abandoned. This Court will not search for authority to sustain a party's position. *Patterson v Allegan Co Sheriff*, 199 Mich App 638, 640; 502 NW2d 368 (1993).

Accordingly, we conclude that the trial court properly dismissed M&D and Donmars' fraud claims against these defendants in their capacity as real estate agents.

V

Plaintiffs M&D and Donmar also challenge the trial court's decision to dismiss pursuant to MCR 2.116(C)(10) plaintiffs' trespass-nuisance claim against defendant MDOT. The MDOT argued, and the lower court agreed, that

the MDOT acquired a prescriptive easement in the drain over the plaintiffs' property. Plaintiffs contest the court's holding that the MDOT acquired a prescriptive easement, and alternatively contend that even if the easement was valid, the MDOT's use of the easement was unreasonable. We agree with the trial court.

The MDOT's drain is connected to the catch basin adjacent to plaintiffs' property. It is undisputed that plaintiffs' property is the lowest in the surrounding area and that water drains to it from all sides. There are three separate drain systems in the area of the property: the MDOT's system, the county drain system, and the Westwood Mall system. The MDOT's drain along Michigan Avenue connects to the county drain. The purpose of the MDOT's drain system is to take the Michigan Avenue storm water to the county drain.

Plaintiffs alleged that the MDOT's drain was either poorly constructed or poorly maintained and thus did not function properly to drain excess water from heavy rainfall, so that the MDOT is liable under the trespass-nuisance doctrine. We disagree. Trespass-nuisance is an exception to governmental immunity and involves a trespass or interference with the use or enjoyment of land caused by a physical intrusion that is set in motion by the government or its agents that results in personal or property damage. *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 169; 422 NW2d 205 (1988).

However, highway commissioners have the right to drain surface waters over lower lands, and may construct drains for that purpose. *Toth v Waterford Twp*, 87 Mich App 173, 175-176; 274 NW2d 7 (1978); see also *Maynard v Hawley*, 331 Mich 123; 49 NW2d 92 (1951). If the owner of the lower estate without objection permits surface waters to flow over his land for the statutory period,[8] the upper estate owner acquires an easement by prescription in the drain. *Toth, supra* at 175-176. Thus, if the MDOT acquired a prescriptive easement, plaintiffs cannot maintain their claim of trespass-nuisance.

The MDOT constructed the drain in 1972. The drain had been in place for over nineteen years before the commencement of this action. The MDOT has not altered the drain since 1972. The undisputed evidence shows that the property at issue is lower in elevation than the drain and that water from the drain has been cast onto the plaintiffs' property for more than fifteen years. Thus, the trial court correctly held that the MDOT acquired a prescriptive easement in the drain over plaintiffs' property. *Toth, supra.*

Plaintiffs alternatively argue that the MDOT's use of the drain is unreasonable. Again, we disagree. In the context of easements, the owner of the upper estate may not place a greater burden on the servient estate by increasing and concentrating the volume and velocity of surface water. *Lewallen v City of Niles*, 86 Mich App 332, 334; 272 NW2d 350 (1978). The MDOT has not altered the drain since 1972. Therefore, there is no evidence that the MDOT increased or concentrated the volume or velocity of the surface water toward plaintiffs' property. Indeed, the evidence indicates that

---

[8] See MCL 600.5801(4); MSA 27A.5801(4).

commercial development in the area has had a significant impact on the effectiveness of the various drainage systems in the area.

In sum, plaintiffs M&D and Donmar have failed to establish facts that defeat the MDOT's prescriptive easement in the drain to cast waters onto plaintiffs' property. Therefore, the trial court properly dismissed plaintiffs' trespass-nuisance claim.

VI

Finally, plaintiffs M&D and Donmar raise a brief claim of judicial bias on the part of the trial court. However, plaintiffs have not attempted to provide this Court with any record evidence supporting such a claim. Accordingly, we decline to address this issue.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.